UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HRT ENTERPRISES,

    Plaintiff,

v.                                     Case No. 12-13710

CITY OF DETROIT,                    HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY (Doc. 26)**

**I.  INTRODUCTION**

**A.**

This is a Fifth Amendment takings case.  Plaintiff HRT Enterprises ("HRT") owns an eleven-acre parcel of land (the "property") in the City of Detroit (the "City") located directly across French Road from the Coleman A. Young International Airport, formerly the Detroit City Airport (the "airport").[1]  HRT says that because the property lies inside the airport's building restriction line[2] and runway visibility line,[3] HRT has been deprived of all economically viable use of the property.

**B.**

---

[1] Attached, as Exhibit A, is a map displaying the property and its relationship to the airport and to the other properties at the corner of Lynch Road and French Road. Exhibit B is a map showing a close-up view of the properties surrounding the property.

[2] The "building restriction line" is an imaginary line imposed under Federal Aviation Administration ("FAA") regulations that identifies a clear area extending 750 feet from an airport's runway.

[3] The "runway visibility line" is an imaginary line enclosing a triangular area within which there can be no buildings under FAA regulations.

1

HRT says that the proposed 2009 Airport Layout Plan (the "2009 Plan") contemplates an enlarged airport, and includes the HRT property as designated for acquisition by the City in the event the development goes forward. HRT says that the City has inversely condemned the property by delaying its acquisition, and by taking actions that substantially reduce the property's value and deprive the property of any viable use.

The complaint is in four counts:

Count I      Inverse Condemnation—*De Facto* Taking

Count II     Inverse Condemnation—City of Detroit's Unreasonable Delay in Acquiring Property

Count III    Inverse Condemnation—Regulatory Taking

Count IV    Substantive Due Process

## C.

In 2005, HRT initially sued the City in state court for inverse condemnation; however, a jury determined that the City's actions did not amount to a taking of the property. In this case, HRT seeks a determination that the City's actions since 2005 amount to a taking of the property.

In March of 2013, the Court denied the City's motion for summary judgment (Doc. 22). The Court explained in its decision that the additional facts that HRT says occurred after a state court jury reached an unfavorable verdict in 2005 "might lead a jury to conclude that today, in 2013, a taking of [the] property has occurred." (*Id.* at 13).

In May 2013, HRT filed a Motion for Summary Judgment on Liability (Doc. 26). During the pendency of the Detroit bankruptcy the case was administratively stayed. (Doc. 42) After the bankruptcy proceedings ended the stay was lifted and the case

reopened in January 2015. (Doc. 48) In May 2015, the Court held a hearing to clarify the status of the 2009 Plan.

Now before the Court for decision is HRT's motion for summary judgment. For the reasons that follow, HRT's motion is GRANTED.

## II. BACKGROUND

### A. The Property

In 1983, fifty-six years after the airport was opened, HRT purchased the property eleven acres in size. To the east, the property is bordered by French Road. On the opposite side of French Road is the airport. Airport-owned land also borders the property to the north and to the west. To the south are commercial parcels owned by the Chrysler Corporation and MichCon (a subsidiary of DTE Energy) and consisting of approximately 20 acres collectively. *See* Exhibits A &B.

The property "contain[ed] an existing building that is approximately 188,000 square feet in size." *HRT Enters. v. City of Detroit*, No. 268285, 2007 WL 2118867, at *1 (Mich. Ct. App. July 24, 2007). The property was operated as a steel service center. The front of the building is approximately 525 feet from the centerline of the airport's existing Runway 15/33. *Id.* at *1. Although portions of the building have been demolished, the remaining portion of the building, consisting of office space, is within the FAA's standard building restriction line.

Since 1972, the FAA has granted design waivers, allowing the airport to operate with a smaller safety area than FAA standards require. As explained by the Michigan Court of Appeals:

> The waivers were renewed in 1988, but the city was
> expected to take appropriate action by "removing, lowering,

3

> relocating, marking or lighting, or otherwise mitigating these airport hazards. . ." The city proposed to acquire properties and eliminate structures to clear an area 750 feet from the existing runway centerline when it acquired FAA funds to do so. According to the FAA, applications to fund such a proposal are considered "on a priority needs basis."

*Id.* at *1.

## B. The City's Airport Expansion Plans

### *1. The 1996 Plan*

In 1991, the Detroit City Council "approved acquisition of land surrounding the airport to remove any existing hazards on the property near the airport." *Id.* From time to time, the City then acquired by purchase or by condemnation some of the land in the surrounding area. *Id.* The area is collectively known as the "Mini-Take Area." The Mini-Take is comprised of an area east of French Road, extending north of the property to McNichols Road. The Mini-Take Area consists exclusively of residential property. HRT's property—as well as the properties owned by Chrysler and MichCon—lays outside and to the south of the Mini-Take Area. *See* Exhibits A &B.

The FAA, however, "did not provide federal funds to the project in an amount sufficient to allow the city to condemn [the] property." *HRT Enters.*, 2007 WL 2118867, at *1. Although the property was in close proximity to the airport and to other land within the Mini-take Area, it was not included in the Mini-Take Area. In 1992, the City advised HRT that it should continue to operate its normal business. *Id.*

In 1996, the City filed with the FAA and the State the Airport Layout Plan. The plan detailed the expansion of the airport, including plans for a new runway. The City relied on the plan to request federal funding. However, by 2005, "[t]he airport expansion did not occur, nor did funding for acquisition of the property." *Id.*

4

Since 2005, the City has acquired approximately a third of the residential properties within the Mini-Take area. Additionally, the airport owns approximately another third. All of the remaining residential property in the Mini-Take Area is either owned or is being acquired by the City through federal funding.

### 2. The 2009 Plan

The 2009 Plan was drafted in contemplation of a large expansion of the airport than the 1996 plan, and designates for acquisition the HRT property. If the airport is expanded as contemplated in the 2009 plan, Lynch and French Road will no longer exist. In addition, the 2009 Plan calls for a new runway and a new taxiway that will pass directly through the property. When the 2009 Plan is implemented, the City will be required to acquire the property.

The 2009 plan is not on official plan. Currently, the only approved Airport Layout Plan on file with the FAA and the State is the 1996 Plan.

### C. Previous Cases Relating to the Property

### 1. The 1999 and 2005 State Court Cases

In September 1999, because of the City's acquisition policies, Merkur Steel, one of HRT's tenants, filed a takings suit against the City in Wayne County Circuit Court (Doc. 22 at 2). In 2002, a jury found in favor of Merkur Steel, that the City's acquisition efforts amounted to a *de facto* taking of Merkur Steel's leasehold interest in the property. (Id.) The Court of Appeals of Michigan affirmed in a 2004 decision. *See Merkur Steel Supply Inc. v. City of Detroit*, 261 Mich. App. 116, 680 N.W.2d 485 (2004).

Merkur Steel's sub-tenant Steel Associates, Inc. (Steel Associates) filed a separate action in Wayne County Circuit Court against the City claiming a de facto

5

taking of its leasehold interest. (Id.) In 2003, a jury found in favor of Steel Associates. (Id.) The Court of Appeals of Michigan affirmed in a 2005 decision. *See Steel Associates, Inc. v. City of Detroit*, No. 254025, 2005 WL 2656648 (Mich. Ct. App. Oct. 18, 2005).

Subsequently in 2005, Merkur Steel, Steel Associates and HRT collectively filed suit in Wayne County Circuit Court against the City for inverse condemnation. (Id.) The parties alleged "that the filing of the airport layout plan and the threat of potential condemnation of the property affected its property so adversely as to amount to [a] taking without just compensation." *HRT Enters.*, 2007 WL 2118867, at *1.

After the trial court granted HRT's motion to proceed to trial on HRT's claims alone, the case was tried to a jury in September of 2005. The jury returned a no cause of action verdict, rejecting HRT's claim of inverse condemnation. The Michigan Court of Appeals affirmed the verdict in 2007, stating that there was "competent evidence to support a finding that the city's actions were not a substantial cause of the decline of HRT's property and that the [C]ity did not abuse its legitimate powers in affirmative actions directly aimed at HRT's property." *Id.* at *7. In 2008, the Michigan Supreme Court denied leave to appeal. *HRT Enters. v. City of Detroit*, 480 Mich. 1134 (2008).

### *2. 2008 Federal Court Case*

In 2008, HRT sued the City for inverse condemnation in this court based on additional events that occurred since the 2005 trial. *HRT Enters. v. City of Detroit*, No. 08-14460 (E.D. Mich. 2008). The court dismissed the case without prejudice, finding that because HRT did not seek compensation through state procedures based on the

6

new facts, the case was unripe for federal review under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195-97 (1985).

### *3. 2009 State Court Case*

In 2009, following the dismissal of the federal court case, HRT again sued the City for inverse condemnation in state court. The trial court dismissed HRT's inverse condemnation claims based on *res judicata* grounds, and, in 2012, the Michigan Court of Appeals affirmed the dismissal. *HRT Enters. v. City of Detroit*, No. 09-016475-CC, 2012 WL 3055221 (Mich. Ct. App. July 26, 2012). HRT did not seek leave to appeal to the Michigan Supreme Court.

### D. The Present Case

After the state court dismissed HRT's claims as described above, HRT filed this case. In November 2012, the City filed the motion for summary judgment (Doc. 9). The Court denied the motion. (Doc. 22) In its decision denying the City's motion, the Court concluded that

> [t]he overwhelming additional events that have occurred since 2005, when a state court jury determined that HRT did not have a takings claim, present a question of fact as to whether a taking has now occurred. The City has continued its acquisition efforts in the Mini-Take Area for eight years since the 2005 jury trial. There is an abundance of facts of which a jury may now find amount to a taking of [the] property.

(Id. at 14).

### E. The May 2015 Hearing

In the May 2015 hearing, the Court heard testimony from two witnesses proffered by the City. First witness was Michael Borta, the airport's Chief Consultant for planning, design, and construction engineering services. The second witness was Jason Watts,

7

Director of the airport. (See Hearing Transcript, Doc. 60) These witnesses clarified the current state of the airport:

(1) HRT's property lies outside the FAA-waived building-restriction line. (See id at 17-18; Exhibit 1 to the Miscellaneous Hearing, Doc. 60 Ex. 1) However, if the airport is to meet FAA standards, the airport's primary surface will extend to the property line, and the building-restriction zone will extend approximately one-third into the eastern boundary of the property. (Id. at 21) At the building-restriction line, a building can not be constructed higher than 35 feet. (Id.) Further, as the distance from the runway decreases, the allowable height decreases at a set rate. (Id. at 22) Watt testified that HRT would be "very limited" in its ability to use its property within the standard building restriction line. (Id. at 38)

(2) The City has been acquiring property within the Mini-Take Area in order to cure the technical violations that form the basis for the FAA waivers. Currently, all of the residential property in the Mini-Take Area is either owned or being acquired by the City. Although the City initially paid for these acquisitions, the FAA has generally reimbursed the City what it paid out. (Id. at 11-12)

(3) The property was not included in the Mini-Take Area because the FAA instructed the City to acquire residential properties before commercial properties. The City has submitted to the FAA an Airport Capital Improvement Plan, which includes requests to the FAA for funds to acquire the property. These requests have been "continually rejected." (Id. at 19, 26-27) Nonetheless, the same building restrictions apply to the property as to the residential properties within the Mini-Take Area. (Id. at 25-26) Other than the HRT property, the only commercial property outside the Mini-

Take Area—and therefore not planned for acquisition by the City—are the two parcels to the south of HRT, owned by Chrysler and MichCon.

(4) In 2010, the Capital Improvement Plan was revised to delete any funding requests for a replacement runway. The current Capital Improvement Plan is therefore geared toward rehabilitation of the existing runway and physical plant, rather than toward a replacement runway.

(5) Contrary to recently published newspaper articles,[4] the City has not acquired—nor has requested funding from the FAA to acquire—land necessary to build the new runway. (Id. at 12-13) Nor is it the City's intention to build a new runway at the airport at this time. (Id. at 31) Instead, FAA funds have been used to upgrade the existing airport facilities and for reimbursement from Mini-Take acquisitions. (Id at 13-14, 29)

### III. STANDARD OF REVIEW

The standard for summary judgment is well known and is not repeated in detail. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ultimately the district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

---

[4] *See City Airport Plain May Finally Lift Off*, Detroit News (March 26, 2015), http://www.detroitnews.com/story/news/local/detroit-city/2015/03/26/city-airport-plan-may-finally-lift/70523064/; *Detroit Bankruptcy Plan Calls for Revitalizing Detroit City Airport*, Detroit Free Press (April 4, 2014), http://archive.freep.com/article/ 20140404/NEWS01/304040017/Detroit-bankruptcy-plan-calls-for-revitalizing-Detroit-city-airport.

## IV. DISCUSSION

**A.**

HRT says it is entitled to summary judgment on the issue of liability. HRT says that there is no genuine issue of material fact that, based on the events that have occurred since the 2005 state court jury verdict, the City has effectively condemned the property and its actions amount to a taking without just compensation.

The City says that there has been no taking because the City has no plans to acquire the property, has not imposed a moratorium on building on the property, and has not sent notices that it intends to do so. The City further reiterates that it has no current plan to change the layout of the airport as it now exists, or to extend its boundaries, and that it does not need to acquire the property to comply with FAA regulations. The City therefore argues that planning for the future of the airport cannot constitute a taking. Further, the City says that because there is no moratorium on building at the property, HRT is free to apply for a building permit.

**B.**

An inverse condemnation (or *de facto* taking) occurs when a government agency does not purchase the plaintiff's property rights, but effectively takes all or part of the property through its actions. In *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304 (1987), the U.S. Supreme Court explained that

> [t]he general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings.

10

*Id.* at 316 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)) (brackets in original); *see also United States v. Clarke*, 445 U.S. 253, 257 (1980) (noting that a landowner may "recover[] just compensation for a taking of his property when condemnation proceedings have not been instituted.") "A landowner is entitled to bring such an action as a result of the self-executing character of the constitutional provision with respect to compensation." *Clarke*, 445 U.S. at 257 (quotation marks and citations omitted).

Whether a particular restriction will be considered a taking depends largely on the particular circumstances of the case. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). A claim of regulatory taking under federal law is therefore "characterized by 'essentially ad hoc, factual inquiries.'" *Taho-Sierra Pres. Council, Inc. v. Taho Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) (citing *Penn Central Transp. Co.*, 438 U.S. at 124). Factors generally considered to be significant include: (1) the economic impact on the property owner; (2) the extent to which the regulation interferes with investment backed expectations in the land; and (3) the character or extent of the government action. See *Penn Central Transp. Co.*, 438 U.S. at 124. This analysis "does not divide a single parcel into discrete segments," but instead focuses "both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." *Id.* at 130-31.

### C.

Based on the undisputed facts described above, the Court finds that summary judgment in HRT's favor is appropriate.

11

The Court acknowledges that the record as it stands supports the City's contention that there are no current plans to fund a new runway at the airport, and that the current Capital Improvement Plan is limited to maintaining and upgrading the existing runways and physical plant and to reimbursing the City for the Mini-Take acquisitions.

However, the record also establishes that the City's acquisitions in the Mini-Take Area is intended to bring the airport in compliance of FAA safety standards—in particular, the standard building restriction line. This line extends approximately one-third into the property, and limits buildings within it to 35 feet high or less, depending on the distance from the airport runway. In addition, there is no dispute that the runway visibility line extends into the southeast corner of the property, and that the existing building requires an FAA waiver. At the May Hearing, Watt conceded that it was "probably not" possible to get a permit to build a 40-foot high building on the property within this building restriction line. (Doc. 60 at 31) This directly contradicts the City's position that HRT is "free to apply for a building permit." (Doc. 28 at 19)

Even if there is not a current plan to add new runway, the City has expressed its clear intention to bring the airport within FAA standards. Contrary to the City's position, bringing the airport to within FAA standards would directly involve HRT's property. The City's goal of bringing the airport to full FAA standards would consequently severely limit HRT in the use of its property and/or necessitate the City's acquisition of the property.

In addition, the City has stated that the HRT property has not been acquired because, in significant part, the FAA has not provided funding for the purchase.

12

Although the City has not formally included a replacement runway in the official plan, the City has indicated that it looks favorably on a replacement runway that would go through the property, should the FAA approve funding. Finally, Watt conceded that if the FAA were to withdraw its waivers, the airport would have no choice to but to acquire the property or cease operations.

For these reasons, the City has effectively taken HRT's property. The City concedes that it has requested funds from the FAA to acquire the property, which has not been approved. Thus, although there are no approved plans to expand the airport or acquire the property, the City has effectively placed a hold on the property with no compensation to HRT.

## V. CONCLUSION

### A.

The circumstances of the case call to mind what Supreme Court Justice Stephen Johnson Field said when sitting on the Circuit Court, D. California in *Ho Ah Kow v. Nunan*, 12 F. Cas. 252, 255 (C.C.D. Cal. 1879):

> When we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see as men . . .

One has only to look at Exhibits A and B (the layout of the City airport), the surrounding properties owned by the City, and the FAA-regulated boundaries+ to know that, for all practical purposes, the City has effectively acquired HRT's property. The property is not commercially useable, and the City has not paid for its "ownership." It has inversely condemned the property.

### B.

For the reasons stated above, HRT's motion for summary judgment on liability is GRANTED. The issue of damages shall proceed to trial. The case manager will set a date for a status conference to chart the future course of the case.

SO ORDERED.

                                         s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

Dated: August 13, 2015

14





# EXHIBIT B

Airport
HRT
MichCon
Airport
Chrysler
Airport
Molena-Castle Playground
French Rd
Madola Ave
Lynch Rd
Wood St
Siebert St
Lyford Ave
Leander St
Kenney St
Montlieu Ave