UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HRT ENTERPRISES,

        Plaintiff,                  Case Number 12-13710

v.                                       Honorable David M. Lawson

CITY OF DETROIT,

        Defendant.
_____/

**CORRECTED OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR RECONSIDERATION AND DENYING PLAINTIFF'S
MOTION TO CERTIFY THE CASE FOR INTERLOCUTORY APPEAL**

The Court issues this corrected opinion to resolve a textual error regarding the date of the taking that was determined by the jury's verdict.

A jury returned a verdict of $4.25 million in favor of the plaintiff HRT Enterprises in this inverse condemnation case and determined that the City of Detroit's actions amounted to a taking as of January 1, 2009. The plaintiff's property has sometimes figured in the City's on-again-off-again plans to expand or improve Detroit City Airport, now known as the Coleman Young International Airport. The jury was not asked to determine whether the City's actions amounted to a taking; that question was resolved by my predecessor, the Honorable Avern Cohn, on summary judgment. After the jury returned its verdict, the City moved for a new trial, which Judge Cohn granted subject to a remittitur reducing the damages to $2 million. Both sides rejected the remitted amount, and that's where the case stands.

However, both sides are seeking second (and third) opinions: the City has moved for "reconsideration" of Judge Cohn's summary judgment decision and a previous order denying a motion to dismiss, and the plaintiff has asked this Court to certify the remittitur decision for

interlocutory appeal. Although the Court has the authority to revisit any of its interlocutory orders before entry of a final judgment, Fed R. Civ. P. 54(b), the City has not identified any procedure that allows it to make such a request to the Court (the City's reconsideration request is woefully tardy) or any good reason to upset Judge Cohn's well-reasoned summary judgment decision, or his order denying the City's earlier motion for reconsideration. HRT has not established the grounds required by 28 U.S.C. § 1292(b) for an interlocutory appeal; it has not shown that there are substantial grounds for disagreement over Judge Cohn's decision that the evidence failed to support the jury's damage award. Both motions will be denied. The case will be scheduled for a trial on damages when the Court is able to summon a jury.

I.

After Judge Cohn ordered remittitur and a new trial, he retired and the case was reassigned to the undersigned. The Court held a status conference with the parties in February of 2020 where the City indicated its intention to file a motion to revisit Judge Cohn's summary judgment decision, promising that it had "new evidence" that called into question the correctness of the taking determination. The Court allowed the City to file new briefing if it could do so without running afoul of procedural rules. The City then filed what it has titled a motion for reconsideration, asking the Court to allow new briefing on the issue of whether a take occurred. It has not made good on its promises: the "new evidence" consists of a rehash of facts discussed at length by the parties in their previously-filed briefs and Judge Cohn's opinions, and they have not identified a procedural vehicle that allows them to seek reconsideration again.

HRT's property is a commercial parcel adjacent to French Road, which separates it from the airport proper. At one time, it contained a 188,000-square-foot building that operated as a steel service center. The front of the building is approximately 525 feet from the centerline of the

airport's existing Runway 15/33. Although portions of the building have been demolished, the remaining portion of the building, consisting of office space, is within the FAA's standard building restriction line. Since 1972, the FAA has granted design waivers, allowing the airport to operate with a smaller safety area than FAA standards require. The waivers were renewed in 1988, but the city was expected to take appropriate action by mitigating these airport hazards. The city proposed to acquire properties and eliminate structures to clear an area 750 feet from the existing runway centerline when it acquired FAA funds to do so.

The City's plans for the airport, and their effect on the viability of HRT's property for commercial use, has spawned multiple lawsuits in state court and this Court. The City never formally condemned HRT's property under its eminent domain power, although it condemned or otherwise acquired other land in the airport vicinity in its so-called "Mini-Take Area." In 1996, the City filed with the FAA and the State the Airport Layout Plan. The plan detailed the expansion of the airport, including plans for a new runway. The City relied on the plan to request federal funding. However, by 2005, the airport expansion had not occurred, nor was funding forthcoming for acquisition of the property. Since 2005, the City has acquired approximately a third of the residential properties within the Mini-Take Area. Additionally, the airport owns approximately another third. All of the remaining residential property in the Mini-Take Area is either owned or is being acquired by the City through federal funding.

Another plan was drafted in 2009 in contemplation of a larger expansion of the airport than the 1996 plan. The 2009 plan designates the HRT property for acquisition. If the airport were expanded as contemplated in the 2009 Plan, Lynch and French Road would no longer exist. In addition, the 2009 Plan called for a new runway and a new taxiway that would pass directly through HRT's property. The 2009 Plan would have required the City to acquire that property, but the

2009 Plan was not an official plan. As of 2015, the only approved Airport Layout Plan on file with the FAA and the State was the 1996 Plan.

The City's acquisition policies spawned other litigation over the property.

Each of HRT's two tenants filed a lawsuit alleging inverse condemnation of their leasehold interests. Merkur Steel filed a takings suit against the City in the Wayne County, Michigan circuit court in September 1999. That suit resulted in a jury verdict in favor of Merkur Steel concluding that the City's acquisition efforts amounted to a *de facto* taking of Merkur Steel's leasehold interest in the property. The Michigan Court of Appeals affirmed that determination and the $6.8 million compensation award. *See Merkur Steel Supply Inc. v. City of Detroit*, 261 Mich. App. 116, 680 N.W.2d 485 (2004). Merkur Steel's sub-tenant Steel Associates, Inc. filed a separate action in the Wayne County circuit court against the City also alleging a *de facto* taking of its leasehold interest. In 2003, a jury found in favor of Steel Associates and awarded $4 million in compensation. The court of appeals affirmed in a 2005 decision. *See Steel Associates, Inc. v. City of Detroit*, No. 254025, 2005 WL 2656648 (Mich. Ct. App. Oct. 18, 2005).

Subsequently in 2005, Merkur Steel, Steel Associates, and HRT collectively filed suit in Wayne County circuit court against the City for inverse condemnation. The parties alleged "that the filing of the airport layout plan and the threat of potential condemnation of the property affected its property so adversely as to amount to [a] taking without just compensation." *HRT Enterprises v. City of Detroit*, No. 268285, 2007 WL 2118867, at *1 (Mich. Ct. App. July 24, 2007). HRT proceeded to trial on its own, and in 2005 a jury returned no-cause-of-action verdict in favor of the City. The state court of appeals affirmed, stating that there was "competent evidence to support a finding that the city's actions were not a substantial cause of the decline of HRT's property and that the [C]ity did not abuse its legitimate powers in affirmative actions directly aimed at HRT's

property." *Id*. at *7. The Michigan Supreme Court denied leave to appeal. *HRT Enters. v. City of Detroit*, 480 Mich. 1134 (2008). The City here attributes the apparently inconsistent verdicts to bad lawyering on its part.

Next, HRT sued the City for inverse condemnation in this court in 2008 based on additional events that occurred since the 2005 trial. *HRT Enters. v. City of Detroit*, No. 08-14460 (E.D. Mich. 2008). Judge Cohn dismissed that case without prejudice, finding that because HRT did not seek compensation through state procedures based on the new facts, the case was unripe for federal review under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195-97 (1985), *overruled by Kinck v. Twp. of Scott, Pa*, --- U.S. ---, 139 S. Ct 2162 (2019).

Undaunted, HRT returned to state court in 2009 and again sued the City for inverse condemnation. The trial court dismissed that case based on *res judicata*, and the Michigan Court of Appeals affirmed the dismissal. *HRT Enters. v. City of Detroit*, No. 09-016475-CC, 2012 WL 3055221 (Mich. Ct. App. July 26, 2012). HRT did not seek leave to appeal to the Michigan Supreme Court.

All of that set the stage for the present lawsuit, which HRT filed in 2012, alleging inverse condemnation based on events that occurred since the 2005 jury verdict in state court. The City filed a motion to dismiss, or alternatively for summary judgment, pressing a *res judicata* argument based on the 2005 state court verdict in its favor and the dismissal of the 2009 state court case on the same grounds. Judge Cohn denied that motion, concluding that additional events that had occurred since 2005 would permit a new jury to find a taking of the property. *See* ECF No. 22.

HRT then filed its motion for partial summary judgment on liability, arguing that because the property lies inside the airport's building restriction line and runway visibility line, it has been

deprived of all economically viable use of the property and is entitled to compensation. Judge Cohn held a hearing in May 2015 and heard testimony from two witnesses proffered by the City. The first witness was Michael Borta, the airport's Chief Consultant for planning, design, and construction engineering services. The second witness, Jason Watts, was the director of the airport. These witnesses established that:

(1) HRT's property lies outside the FAA-waived building-restriction line. However, if the airport is to meet FAA standards, the airport's primary surface will extend to the property line, and the building-restriction zone will extend approximately one-third into the eastern boundary of the property. At the building-restriction line, a building can not be constructed higher than 35 feet. Further, as the distance from the runway decreases, the allowable height decreases at a set rate. Watt testified that HRT would be "very limited" in its ability to use its property within the standard building restriction line.

(2) The City has been acquiring property within the Mini-Take Area in order to cure the technical violations that form the basis for the FAA waivers. Currently, all of the residential property in the Mini-Take Area is either owned or being acquired by the City. Although the City initially paid for these acquisitions, the FAA has generally reimbursed the City what it paid out.

(3) The property was not included in the Mini-Take Area because the FAA instructed the City to acquire residential properties before commercial properties. The City has submitted to the FAA an Airport Capital Improvement Plan, which includes requests to the FAA for funds to acquire the property. These requests were "continually rejected." Nonetheless, the same building restrictions applied to the property as to the residential properties within the Mini-Take Area. Other than the HRT property, the only commercial property outside the Mini Take Area — and therefore not planned for acquisition by the City — are the two parcels to the south of HRT, owned by Chrysler and MichCon.

(4) In 2010, the Capital Improvement Plan was revised to delete any funding requests for a replacement runway. The current Capital Improvement Plan is therefore geared toward rehabilitation of the existing runway and physical plant, rather than toward a replacement runway.

(5) Contrary to recently published newspaper articles, the City has not acquired — nor had it requested funding from the FAA to acquire — land necessary to build the new runway. Nor is it the City's intention to build a new runway at the airport at this time. Instead, FAA funds have been used to upgrade the existing airport facilities and for reimbursement from Mini-Take acquisitions.

In August 2015, Judge Cohn granted HRT's summary judgment motion on the issue of a take, finding that the City had inversely condemned the parcel and stating that the issue of damages

would proceed to trial. ECF No. 63. In addition, the jury would also have to determine the date of the take. The City moved for reconsideration. The Court ordered HRT to respond, and after the Court allowed more discovery and the parties submitted several rounds of supplemental briefing, Judge Cohn denied the motion. ECF No. 94. The City asked the Court to certify the case for an interlocutory appeal under 28 U.S.C. § 1292, and the Court granted that motion, specifically targeting the partial summary judgment on liability. ECF No. 132. However, the court of appeals denied the City's motion for permission to appeal, unconvinced "that there is a substantial ground for a difference of opinion as to the district court's ruling." ECF No. 133.

The case proceeded to trial, and on April 24, 2019, a jury decided that the fair market value of the parcel on the date of the take was $4.25 million, and the date of the take, i.e., when the parcel ceased being commercially viable as a result of the City's actions, was January 1, 2009. Judgment was entered in favor of HRT. ECF No. 277. In response to the City's motion, the Court granted a new trial, subject to a remittitur of damages that would leave a $2 million damage award. ECF No. 315.

After that order was entered, and followed shortly thereafter by Judge Cohn's retirement, this case was reassigned to the undersigned. The Court held a status conference in January 2020. HRT already had filed a motion to certify the remittitur order for interlocutory appeal. At the status conference, the City announced its intention to file a motion on account of "new evidence." The Court dismissed HRT's post judgment motions without prejudice and allowed the City to file new briefing if it could do so without running afoul of procedural rules. The City then filed what it has titled a motion for reconsideration. HRT filed a response at the Court's direction and the City filed a reply.

II.

Parties may seek relief from a district court's ruling through a motion for reconsideration under E.D. Mich. Local Rule 7.1(h)(3), or a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), or a motion for relief from an order or judgment under Civil Rule 60(b). The City has invoked none of these procedural rules in its challenge to the 2013 order denying its motion to dismiss and the 2015 order granting partial summary judgment to HRT. It would be folly for it to do so, as the time has expired for such motions under all of them. *See* LR 7.1(h)(1) (14 days from entry of the challenged order); Fed. R. Civ. P. 59(e) (28 days after entry of judgment); Fed. R. Civ. P. 60(b), (c) (one year after entry of the challenged order). Instead, the City cites Civil Rule 54(b), which speaks not to a litigant's rights, but to the Court's authority to "revise" "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."

The City maintains that the Court should exercise this authority and allow new briefing on the liability issue, under threat of sure reversal of Judge Cohn's decision on appeal. However, in support of that demand, the City offers no new arguments or new facts. Instead, it recycles its earlier arguments based on *res judicata* that it has presented multiple times to this Court and the court of appeals.

Certainly, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health and Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citations omitted). But that rare action usually must be supported by "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Ibid.* None of that is apparent here.

What is evident, however, is that "the reassignment of a case to a different judge does not open up previous rulings in the case for wholesale reconsideration" unless the rulings were clearly erroneous or contrary to law. *Murphy v. Kollar-Kotelly*, No. 07-0068, 2008 WL 899357, at *1 (M.D. Tenn. Apr. 1, 2008). A ruling is clearly erroneous "where it is against the clear weight of the evidence or where the court is of the definite and firm conviction that a mistake has been made." *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 281 (6th Cir.1991) (internal citations omitted). The test is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one that the reviewing court would draw. Rather, the ruling will remain undisturbed when there is evidence in the record to support the finding and its construction of that evidence is a reasonable one. *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985) (citations omitted).

Again, a judge who has inherited a case upon reassignment is not free to reconsider a prior judge's decision "merely because he has a different view of the law or the facts from the first judge." *Best v. Shell Oil Co.,* 107 F.3d 544, 546 (7th Cir. 1997); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000) (emphasizing that principles of comity and uniformity weigh against reconsidering a colleague's prior ruling).

A.

The City argues that Judge Cohn's March 2013 order is flawed because it fails to consider the state court decision that bars the Court from adjudicating the case. But Judge Cohn did consider the state court decision and rejected this identical argument. He found that the Michigan Court of Appeals did not adjudicate the case on the merits, so this Court was not and is not bound by that decision.

Under the full faith and credit statute, a federal court must give preclusive effect to prior state court actions according to the preclusion law of the state. 28 U.S.C. § 1738; *San Remo Hotel, L.P. v. City and Cnty. of San Fran., Cal.*, 545 U.S. 323, 336 (2005). The Michigan Supreme Court has recognized that "[t]he doctrine of res judicata bars a subsequent action when '(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Estes v. Titus*, 481 Mich. 573, 585, 751 N.W.2d 493, 499 (2008) (quoting *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999)).

The state trial court in 2008 held that HRT's new inverse condemnation claim was barred by *res judicata* based on the finding of the 2005 jury trial, *see HRT Enters. v. City of Detroit*, No. 08-14460 (E.D. Mich. 2008), and the Michigan Court of Appeals affirmed on that same basis, *HRT Enterprises v. City of Detroit*, No. 304057, 2012 WL 3055221 (Mich. Ct. App. July 26, 2012). The court of appeals held that the new facts HRT cited — "the airport expansion plan, media messages regarding the planned airport expansion, piecemeal acquisition of properties in the acquisition area, failure to purchase plaintiff's property, blight in the city, and the closing of McNichols Road" — all existed at the time of the 2005 trial in state court. *Id.* at *3 n.3. Judge Cohn, however, pointed to 14 enumerated additional facts that the plaintiff identified as cropping up since its earlier jury defeat — some of which also occurred *after* the 2009 state court dismissal — none of which were considered or addressed on the merits ruling by the state court. The City attempts to pick apart Judge Cohn's reasoning that these facts were "new," arguing that they overlapped in large measure with those cited by the state court of appeals and insisting that subsequent developments in the litigation cast doubt on them. For instance, it says, "we know now that HRT shut down for economic reasons in 2008, so anything after that date could not

possibly be relevant." ECF No. 327, PageID.9567. In support, it points to a few lines of testimony from one of the City's witnesses at trial. However, there was ample evidence in the record to prove that the FAA restrictions severely limited HRT's use of its property regardless of any additional economic factors. *See*, *e.g.*, ECF No. 63, PageID.3084 (FAA restrictions made the property commercially unusable); ECF No. 60, PageID.2994 (HRT would be "very limited" in its ability to use its property within the standard building restriction line); ECF No. 94, PageID.4025 (100% of the property was subject to FAA restrictions). Even in hindsight, Judge Cohn's denial of the City's motion to dismiss in 2013 was not clearly erroneous or manifestly unjust.

In addition, the City suggests that *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), requires a different result. But that decision does not amount to "an intervening change in controlling law" sufficient to justify reexamination of a prior order. *Rodriguez,* 89 F. App'x at 959 (citations omitted).

*Knick* overruled *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, which required a potential federal court litigant to exhaust her state court remedies before filing a federal court action. And it left intact *San Remo Hotel, L. P. v. City and County of San Francisco*, 545 U.S. 323 (2005), which merely rejected the argument "that federal courts simply should not apply ordinary preclusion rules to state-court judgments when a case is forced into state court by the ripeness rule of *Williamson County*." *Id.* at 341-42. But that does not change Judge Cohn's *res judicata* analysis, which faithfully applied the full faith and credit statute, 28 U.S.C. § 1738, and Michigan claim preclusion law.

B.

The City also attacks the August 2015 order granting summary judgment in favor of HRT on liability, arguing that it is fundamentally flawed as a matter of law. The City takes issue with the Court's application of *Penn Central Transport Co. v. City of New York*, 438 U.S. 104 (1978), contending that Judge Cohn provided only a "cursory" analysis of the case, which the city argues is dispositive in its favor. However, the City admits that this argument is a rehash of a similar one that it previously presented to Judge Cohn. For that reason alone, it fails this time.

Moreover, Judge Cohn properly applied *Penn Central*. In that case, the Supreme Court held no taking had occurred because there was no interference with the property owner's "primary expectation concerning the use of the parcel," when New York City enacted historic landmark preservation legislation that essentially foreclosed the construction of a 50-story office structure on top of the then-existing Grand Central Terminal. 438 U.S. at 136. The City attempts to draw a direct line from that holding to the present case, despite the Supreme Court's caution that it "has been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government," and that the government's obligation to pay just compensation "depends largely upon the particular circumstances in that case." *Id.* at 124 (cleaned up); *see also id.* at 136 ("That inquiry may be narrowed to the question of the severity of the impact of the law on appellants' parcel, and its resolution in turn requires a careful assessment of the impact of the regulation on the . . . site.").

Here, Judge Cohn properly considered the facts and came to a different conclusion than the court in *Penn Central*. That the City disagrees with the analysis is not a basis for the Court to change its prior holding. *See Rose v. United States*, No. 18-4109, 2019 WL 5855765, at *2 (6th Cir. July 10, 2019) ("disagreement with this court's ruling is not an extraordinary circumstance

that would warrant reconsideration."); *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. June 2, 1992) (holding that a motion to reconsider is not supported by a "clear error of law" when a party merely disagrees with the court's conclusion). No clear error occurred here.

The City insists, however, that the August 2015 order was flawed because there were insufficient facts to conclude there was a take, arguing that there was never a take because HRT was able to use the property as it always had. In support, the City points to a survey showing that only two acres of HRT's twelve-acre site were affected by the building restriction line, and that those two acres still could operate as usual.

Judge Cohn determined otherwise, noting that the parcel is rectangular in shape. The front portion, 23.7% of the total, is subject to a height restriction by the FAA that forbids anything being built on it. The balance, 76.3%, is subject to City of Detroit zoning regulations, which, coupled with surrounding circumstances, make it unusable. Judge Cohn determined as a matter of law that the property was not commercially useable. The City filed a motion for reconsideration on this issue, which the Court denied, ECF No. 94, and the the Sixth Circuit found no "substantial ground for a difference of opinion" on the merit of that ruling ECF No. 133.

Finally, the City argues the 2015 order discusses issues that already were litigated in state court, and therefore, the court's discussion of those issues was improper. But once again, those issues thoroughly were considered and decided by Judge Cohn, whose application of the law and construction of the evidence is a reasonable one. *Heights Community Congress*, 774 F.2d at 140.

The City is not entitled to a third or fourth bite at this well-chewed and thoroughly digested apple. Its motion for reconsideration will be denied.

III.

On the other side of the coin, HRT asks not that the Court reconsider the remittitur decision but that the case be certified for an interlocutory appeal of that ruling.

"The district court may certify an order for interlocutory appeal if it is 'of the opinion' that three conditions exist: '[1] the order involves a controlling question of law to which there is [2] substantial ground for difference of opinion and . . . [3] an immediate appeal may materially advance the termination of the litigation.'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 28 U.S.C. § 1292(b)).

The remittitur decision does not meet all these criteria. Certainly, an immediate appeal could "materially advance the termination of the litigation" if the court of appeals reversed the remittitur and reinstated the jury's damage award. *Id.* at 952 (noting that the Court must find that resolution of the question by appeal "'*may* materially advance the termination of the litigation,'" which undoubtedly is true where a contrary ruling on appeal would end the litigation) (quoting 28 U.S.C. § 1292(b)). But there is no basis to believe such a result is likely, and HRT's showing on the other two criteria falls short.

The question presented also must be one purely of the application of law to undisputed facts, e.g., whether, as a matter of law, certain facts pleaded in a complaint are sufficient plausibly to state a viable cause of action. *Ibid.* Finally, the question must be "controlling," meaning that it "'could materially affect the outcome of the case.'" *Ibid.* (quoting *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002)).

Judge Cohn determined that the jury's $4.25 million award was not supported by the evidence. That conclusion is supported by the trial record in which no expert appraiser placed the

fair market value of the property so high. HRT's expert placed the value slightly north of $3 million as of January 1, 2009, which Judge Cohn found to be inflated because it was based on two improvements that included two factory buildings. The City's appraiser valued the property at $3.1 million in 2005, but only $660,000 as of August 2015. The only evidence the jury could have considered in reaching its verdict was owner Karl Thomas's testimony that he thought the property was worth $5 million. But that opinion was not supported by any underlying facts or any expertise on Thomas's part for real estate valuation.

Judge Cohn cited a long line of authority recognizing the trial court's power to reduce a verdict it finds excessive. *E.g.*, *Blunt v. Little*, F. Case 760 (C.C.D. Mass 1822) (Story, J.); *Fuhr v. Sch. Dist. of the City of Hazel Park*, 364 F.3d 753, 761 (6th Cir. 2004). HRT has not contradicted that authority. Where there is an "established body of law" that forecloses the prospective appellant's position, and it has "cited no law to the contrary," then "there is no substantial ground for difference of opinion." *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994).

Instead, HRT's disagreement with the ruling focuses not on the applicable law but on its discretionary application to the record. But "[a] legal question of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court." *In re City of Memphis*, 293 F.3d at 351.

Moreover, if the remittur ruling were certified for interlocutory appeal, there is little doubt that the City's challenge to the liability ruling also should be certified. But the court of appeals already has shown little appetite for entertaining that question.

-15-

IV.

The City has not identified a proper basis to revisit Judge Cohn's earlier rulings in this case. And HRT has not shown that the remittitur decision fits the criteria of 28 U.S.C. § 1292 for an interlocutory appeal.

Accordingly, it is **ORDERED** that the defendant's motion for reconsideration (ECF No. 327) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion to certify the case for interlocutory appeal (ECF No. 321) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   March 10, 2021