UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HRT ENTERPRISES, a Michigan
partnership,

                         Honorable David M. Lawson

            Plaintiff,              Case No.: 2:12-cv-13710

v

CITY OF DETROIT, a Michigan
municipal corporation,

            Defendant.

---

## RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION IN LIMINE TO PRECLUDE TESTIMONY FROM KARL THOMAS REGARDING THE VALUE OF PROPERTY

HRT Enterprises ("HRT"), by and through its attorneys, Demorest Law Firm, PLLC and Neil Strefling, PC, states as follows for its Response to Defendant City of Detroit's (the "City") Motion in Limine to Preclude Testimony From Karl Thomas Regarding Value of the Property:

The City's Motion in Limine should be denied. For the reasons stated in the attached Brief in Opposition to the City's motion, as well as in HRT's own Motion in Limine Regarding Testimony of Owner on Value of Property (and Brief in Support) (**DOC 379**), this Court should permit Karl Thomas to testify about the value of the subject property. Such owner opinion testimony is permitted by well-established law and is permitted by FRE 701 or 702.

WHEREFORE, HRT requests that the Court grant HRT's Motion in Limine (**DOC 379**), and deny the City's Motion in Limine (**DOC 372**).  The Court should rule that Karl Thomas may testify about his opinion of the value of the property, as its owner, in the upcoming trial.

Respectfully submitted,

DEMOREST LAW FIRM, PLLC

By:/s/ *Mark S. Demorest*
Mark S. Demorest (P35912)
Michael K. Hayes (P75419)
Attorneys for Plaintiff
322 West Lincoln Ave.
Royal Oak, MI 48067
(248) 723-5500
mark@demolaw.com
mike@demolaw.com

/s/ *Neil Strefling*
Neil Strefling (P28453)
Co-counsel for Plaintiff
26153 John R.
Madison Heights, MI 48071
(248) 541-3320
nstrefpc@aol.com

Dated:  April 21, 2022

Thomas, Karl/HRT Enterprises/U.S. Dist. Court - 2nd Case (12-cv-13710)/0 TRIAL (2022)/1 Draft Pleadings/2022 04 13 Brief in Opposition to City's Motion in Limine.docx

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HRT ENTERPRISES, a Michigan
partnership,

             Plaintiff,

v

CITY OF DETROIT, a Michigan
municipal corporation,

             Defendant.

Honorable David M. Lawson
Case No.: 2:12-cv-13710

---

**BRIEF IN OPPOSITION TO
DEFENDANT CITY OF DETROIT'S MOTION IN LIMINE
TO PRECLUDE TESTIMONY FROM KARL THOMAS
REGARDING THE VALUE OF PROPERTY**

## **<u>TABLE OF CONTENTS</u>**

**Page(s)**

INDEX OF AUTHORITIES ................................................................................. ii

ISSUE PRESENTED ....................................................................................... iv

INTRODUCTION ............................................................................................. 1

COUNTER-STATEMENT OF FACTS ............................................................. 1

ANALYSIS ...................................................................................................... 3

A.     The Law Of The Case Doctrine Does Not Bar Thomas' Testimony ........ 3

B.     Karl Thomas As The Owner Of The Property, Is Entitled To
        Testify As To The Value Of The Property ................................................ 5

CONCLUSION ............................................................................................... 10

INDEX OF EXHIBITS ................................................................................... 12

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*City of Grand Rapids v. HR Terryburg*,
    122 Mich. App. 750, 756 (1963)..............................................................5,9

*Cunningham v. Masterwear Corp.*,
    569 F.3d 673, 676 (7th Cir. 2009)..............................................................6

*James River Ins. Co. v. Rapid Funding, LLC*,
    658 F.3d 1207 (10th Cir. 2011)..............................................................8

*JGR, Inc. v. Thomasville Furniture Industries, Inc.*,
    370 F.3d 519 (2004)..............................................................8

*Keith v. Bobby*,
    618 F.3d 594, 599 (6th Cir. 2010)..............................................................3

*Lativafter Liquidating Trust v. Clear Channel Communications, Inc.*,
    345 Fed. Appx. 46 (6th Cir. 2009)..............................................................8

*Neff v. Kehoe*,
    708 F.2d 639, 644 (11th Cir. 1983)..............................................................7

*Sabal Trail Transmission v. 3.921 Acres of Land*,
    947 F.3d 1362, 1368-69 (2020)..............................................................6

*United States v. Houston*,
    2015 WL 6449519 (ED TN 2015)..............................................................4,12

*United States v. McMichael*,
    525 Fed. Appx. 388 (2013)..............................................................4,12

*United States v. Todd*,
    920 F.2d 399 (6th Cir. 1990)..............................................................4

*U.S. v. 79.20 Acres of Land*,
    710 F.2d 1352 (8th Cir. 1983)..............................................................7

**<u>Cases</u>**                                                                                                **<u>Page(s)</u>**

*U.S. v. 329.73 Acres of Land,*
  666 F.2d 281, 284 (5th Cir. 1982)........................................................................7


**<u>Court Rules</u>**

Federal Rules of Evidence..............................................................................1,6

2000 amendment to Federal Rules of Evidence.................................................6.8

## **ISSUE PRESENTED**

Should the Court order that Karl Thomas may testify about the value of the property as its owner?

Plaintiff answers:  Yes

Defendant answers:  No

HRT Enterprises ("HRT"), by and through its attorneys, Demorest Law Firm, PLLC and Neil Strefling, PC, states as follows for its Brief in Opposition to Defendant City of Detroit's (the "City") Motion in Limine to Preclude Testimony From Karl Thomas Regarding Value of the Property:

## **INTRODUCTION**

This Court should deny the City's Motion in Limine because it misstates the law. The City's analysis is superficial and misleading. Under well-established law and the Federal Rules of Evidence, Karl Thomas ("Thomas"), as the owner of the property, is entitled to testify about the value of the subject property as of January 1, 2009. HRT incorporates its Brief in Support of Motion in Limine Regarding Testimony of Owner on Value of Property (**DOC 379**).

Assuming, *arguendo*, that the Court believes that Thomas' prior testimony at the first trial was not sufficiently detailed, or that a proper foundation for his testimony was not laid in the first trial, Thomas should be permitted to lay a proper foundation in his testimony at this second trial. There is no legal basis to categorically exclude his testimony.

## **COUNTER-STATEMENT OF FACTS**

The City claims that HRT owns the property, but that is inaccurate. On March 2, 2018, Judge Cohn entered a Partial Judgment Transferring Title to Property to Defendant City of Detroit (**DOC 162**). That Judgment was recorded with the Wayne

1

County Register of Deeds, and the City of Detroit is the recorded owner of the property.

During the first trial in this case, Thomas testified that he believed the property was worth $5,000,000.00 as of January 1, 2009. Ultimately, he jury awarded HRT $4.25 million in just compensation based in part on Thomas' testimony. It was only after the jury reached its verdict that Judge Cohn took umbrage with Thomas' trial testimony.

Judge Cohn allowed Thomas to testify about the value of the property at trial and allowed the jury to consider that testimony in reaching its verdict. However, after the trial was over, Judge Cohn retroactively decided that there was not a sufficient foundation laid for Thomas' value testimony. Judge Cohn stated that:

> Thomas offered no testimony as to how he formulated his opinion of value. Thomas was not familiar with property values immediately surrounding the parcel. Condemnation cases that allow an owner to testify require the owner to offer some foundational testimony as to knowledge of property values in the area surrounding the subject property.
>
> ****
>
> The opinion of Thomas should have been given no weight by the jury; his opinion was not sound.

(**DOC 315**, pp. 5-6).

Judge Cohn did not decide that Thomas may not testify at the upcoming trial. Judge Cohn could make no ruling on the sufficiency of Thomas' testimony in the second trial, which has not taken place.

## ANALYSIS

**A.    The Law Of The Case Doctrine Does Not Bar Thomas' Testimony**

The City claims that this Court may not allow Thomas to testify about the value of the property in the second trial, based on the "law of the case." The City is wrong for multiple reasons, discussed below.

One aspect of the "law of the case" doctrine "generally bars the district court from reconsidering those issues that the court of appeals has already explicitly or impliedly resolved." *Keith v. Bobby*, 618 F.3d 594, 599 (6th Cir. 2010).

This case has not been decided by the Sixth Circuit, so there is no law of the case established by an appellate decision which this Court must follow on remand. In fact, prior to the first trial, the City asked the Sixth Circuit to grant leave to appeal to review Judge Cohn's decision to grant summary judgment to HRT on liability. The Sixth Circuit denied an interlocutory appeal and stated:

> The district court certified the following question for appeal: '[w]hether the district court's entry of summary judgment on liability in favor of [HRT] was appropriate in this inverse condemnation case based on the undisputed facts, and where the alleged date of taking has not yet been determined.' We are not convinced that there is a substantial ground for a difference of opinion as to the district court's ruling or that an immediate appeal may materially advance the termination of this protracted litigation.
>
> Accordingly, the petition to appeal is DENIED.

**(EX 1)**.

3

The other aspect of the "law of the case" doctrine considers whether a decision of the same court is binding on subsequent proceedings in the same case. The City cites some generic case law on this issue, but completely ignores the relevant Sixth Circuit law. The Sixth Circuit treats evidentiary rulings in a retrial differently than other decisions, such as granting summary judgment. The leading, often cited case, is *United States v. Todd*, 920 F.2d 399 (6th Cir. 1990). The Sixth Circuit explained:

> The nature of the decision being reconsidered—an evidentiary ruling made during the course of trial—also mandates giving the transferee court broad discretion in this matter. Generally, a trial judge has broad discretion on evidentiary rulings because this type of decision turns upon the evidence as developed during the course of a trial. *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984) (recognizing that the law-of-the-case doctrine is flexible and that 'some deference must be given to [the court's] view of the evidence as the case was presented before [it]'); *United States v. Akers*, 702 F.2d 1145 (D.C. Cir. 1983); *United States v. Dovico*, 261 F. Supp. 862 (S.D.N.Y. 1966), *aff'd*, 380 F.2d 325 (2d Cir.), *cert. denied*, 389 U.S. 944, 88 S. Ct. 308, 19 L.Ed.2d 302 (1967). Rigorously applying the law-of-the-case doctrine would undercut the broad discretion that traditionally has been accorded a trial court in these matters.

*United States v. Todd* has been followed by the Sixth Circuit and other district courts. See, for example, *United States v. McMichael*, 525 Fed. Appx. 388 (2013) (**EX 2**) and *United States v. Houston*, 2015 WL 6449519 (ED TN 2015) (**EX 3**).

4

This Court is not bound by Judge Cohn's evidentiary rulings from the prior trial in this new trial. Evidentiary issues for this trial should be decided based on the issue for this trial.

**B.  Karl Thomas, As The Owner Of The Property, Is Entitled To Testify As To The Value Of The Property**

A property owner's opinion of the value of the subject property is admissible. The property owner is not required to be a real estate appraiser or to use the methods of an appraiser. Judge Cohn stated that Thomas was required to "offer some foundational testimony as to knowledge of property values in the area surrounding the subject property" (**DOC 315**). However, Judge Cohn cited no case law for that alleged foundational requirement, and no such requirement exists. Thomas may give his opinion about the value of the property, and the City may then cross-examine and/or present other evidence about its value.

The only foundation requirement is that "a very basic foundation should be laid that the owner is familiar with his property . . ." *City of Grand Rapids v. HR Terryburg*, 122 Mich. App. 750, 756 (1963). The only exceptions to the admissibility of an owner's value opinion in *City of Grand Rapids v. HR Terryburg, supra*, is when the owner inherited the property sight unseen, or is an absentee landlord. In other words, unless the owner has **NO** knowledge of the property at all, the owner is competent to testify about his opinion of the value of the property. It is then the province of the jury to evaluate the weight to give that testimony.

This standard also applies in federal court.  Well respected Judge Posner, writing for the Seventh Circuit, stated that the Federal Rules of Evidence "have been interpreted to permit a property owner to testify about the value of his property." *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) (decided after the 2000 amendments to the Federal Rules of Evidence).  In fact, an owner may testify **either** as a lay or expert witness as to the value of the property.  *Id.*  Judge Posner explained that a property owner:

> can testify about it either as a matter within his personal knowledge, *United States v. Conn,* 297 F.3d 548, 554 n. 2 (7th Cir.2002); *Christopher Phelps & Associates, LLC v. Galloway,* 492 F.3d 532, 542 (4th Cir.2007); *Asplundh Mfg. Division v. Benton Harbor Engineering,* 57 F.3d 1190, 1197–98 (3d Cir.1995), or, if he is an expert on property values, as an expert witness, e.g., *United States v. 68.94 Acres of Land,* 918 F.2d 389, 397–98 (3d Cir.1990); *United States v. 10,031.98 Acres of Land,* 850 F.2d 634, 636–37 (10th Cir.1988) . . .. What the owner is not allowed to do is merely repeat another person's valuation [*Id.*].

More recently, in *Sabal Trail Transmission v. 3.921 Acres of Land*, 947 F.3d 1362, 1368-69 (11th Cir. 2020), the Eleventh Circuit stated:

> We begin with Sabal Trail's argument that it deserves a new trial because the district court erred in permitting Sunderman to testify about how the pipeline affected the value of the parcel.  We review for abuse of discretion a district court's evidentiary rulings, including a decision to admit lay opinion testimony.  . . .  We cannot say that the district court abused its discretion here.
>
> The Federal Rules of Evidence address when a lay witness may offer opinion testimony.  Rule 701 requires that lay

opinion testimony be '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' Fed. R. Evid. 701. In addition, the lay witness's opinion must be derived from her personal knowledge or experience. *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment. As a general rule, 'an owner of property is competent to testify regarding its value.' *Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983) (internal quotation marks omitted).

Given this general rule, we conclude that Sunderman, as one of the two owners of Sunderman Groves, was competent to testify about the value of its property.

In *Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983), the Court explained:

Cases binding on this court have held that 'an owner of property is competent to testify regarding its value.' . . . Though such testimony may be 'self-serving and unsupported by other evidence,' . . . it is 'subject to attack through cross-examination or independent evidence refuting the owner's estimate.' . . . We conclude that at any relitigation of this case, Neff should be permitted to give his opinion of the value of the coin collection.

*See, also, U.S. v. 329.73 Acres of Land*, 666 F.2d 281, 284 (5th Cir. 1982) (emphasis added) ("[T]he opinion testimony of a landowner as to the value of his land is admissible **without further qualification**."); *U.S. v. 79.20 Acres of Land*, 710 F.2d 1352 (8th Cir. 1983) (emphasis added) ("A landowner is presumed to have special knowledge of the property. Thomas' testimony as to the value of his land is therefore 'admitted in federal courts **without further qualification'**.").

Notably, the City has cited absolutely **no authority** stating that an owner is precluded from testifying as to the value of his or her property in an inverse condemnation case. Rather, they attempt to use committee notes from the adoption of the 2000 amendments to the Federal Rules of Evidence. The cases relied upon by the City are not on point because those cases deal with business valuations, not real property, or the owner's testimony was inadmissible for other reasons.

The City intentionally misreads *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207 (10th Cir. 2011). First, *James River* did not involve an owner's testimony about the value of real estate in an inverse condemnation case. Second, the City fails to mention the flaw of the owner's testimony in *James River*. "Mr. Miller relied on a technical report by an outside expert." *Id.* at 1215. It was not testimony about his own opinion.

Similarly, in *JGR, Inc. v. Thomasville Furniture Industries, Inc.*, 370 F.3d 519 (2004), the witness was not an owner, officer or director of the company about whose value he wanted to testify, and the information he relied upon came from others. In other words, he lacked the personal knowledge necessary for an owner's testimony.

Where the owner possesses the requisite personal knowledge, the owner's testimony on value should be allowed. In *Lativafter Liquidating Trust v. Clear Channel Communications, Inc.*, 345 Fed. Appx. 46 (6th Cir. 2009), cited by the City, the Court stated:

8

>     As an investor who researched Eon's financial condition,
>     and later as a member of Eon's board, Vanderhoofven had
>     personal, particularized knowledge of Eon's value. The
>     district court did not abuse its discretion in permitting him
>     to testify about Eon's projected value if it had retained Clear
>     Channel's business. Moreover, contrary to Clear Channel's
>     assertions, Vanderhoofven's testimony rested on a
>     sufficient foundation—his personal research into Eon's
>     financial reports.

Thomas is qualified to testify about his own opinion of the value of the property.

During the first trial, Thomas testified about his familiarity with the property, and his

frequent trips to the property, from the moment that HRT purchased the property

through the prior trial (**DOC 273**, pp. 43, 46). He also testified as to his extensive

knowledge of industrial real estate, in particular the acquisition of the Krupp steel

processing facilities (**DOC 273**, pp. 45-47).

Clearly, Thomas is not an absentee owner who has no knowledge of his

property. Thomas actually bought the property and renovated, expanded and modified

it. He did not inherit the property. Thomas was also responsible for the purchasing and

installation of the fixtures and equipment. Thomas has extensive personal knowledge

of the subject property. He also has a broad base of knowledge about the value of

commercial and industrial real estate from at least 1983 to date.

Judge Cohn misconstrued *City of Grand Rapids v. HR Terryburg, supra,* when

he stated that Thomas was required to provide some foundational testimony as to other

property values in the area. The *Grand Rapids* case, in fact, requires such additional

foundational testimony only if the owner offers testimony regarding comparable values of other property, rather than his own property.

Furthermore, the foundational requirement posed by Judge Cohn does not fit the facts of this case. The vast majority of the land on the west side of the airport, bordered by McNichols (Six Mile) Road on the north and Lynch Road on the south, and by French Road on the east and Van Dyke Road on the west, was residential. Even if Thomas could testify about the value of that neighboring residential real estate, that would not be relevant to the value of the industrial property at 11111 French Road that is the subject of this lawsuit.

## CONCLUSION

WHEREFORE, HRT requests that the Court grant HRT's Motion in Limine (**DOC 379**), and deny the City's Motion in Limine (**DOC 372**). The Court should rule that Karl Thomas may testify about his opinion of the value of the property, as its owner, in the upcoming trial.

Respectfully submitted,

DEMOREST LAW FIRM, PLLC
By:/s/ *Mark S. Demorest*
Mark S. Demorest (P35912)
Michael K. Hayes (P75419)
Attorneys for Plaintiff
322 West Lincoln Ave.
Royal Oak, MI 48067
(248) 723-5500
mark@demolaw.com
mike@demolaw.com

/s/ Neil Strefling
Neil Strefling (P28453)
Co-counsel for Plaintiff
26153 John R.
Madison Heights, MI 48071
(248) 541-3320
nstrefpc@aol.com

Dated:  April 21, 2022

## INDEX OF EXHIBITS

1     December 13, 2017 Order

2     *United States v. McMichael*, 525 Fed. Appx. 388 (2013)

3     *United States v. Houston*, 2015 WL 6449519 (ED TN 2015)

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2022 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Michael D. Weaver | mweaver@plunkettcooney.com |
| Mary Massaron | mmassaron@plunkettcooney.com |
| Erik H. Johnson | ejohnson@plunkettcooney.com |
| Michael S. Bogren | mbogren@plunkettcooney.com |
| James Noseda | nosej@detroitmi.gov |
| Charles Raimi | raimic@detroitmi.gov |

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  None.

DEMOREST LAW FIRM, PLLC

/s/ Robbin Nickerson
Paralegal for Plaintiff's Counsel
322 West Lincoln Ave.
Royal Oak, MI 48067
(248) 723-5500

Thomas, Karl/HRT Enterprises/U.S. Dist. Court - 2nd Case (12-cv-13710)/0 TRIAL (2022)/1 Draft Pleadings/2022 04 13 Brief in Opposition to City's Motion in Limine.docx

# EXHIBIT 1

No. 17-0102

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 13, 2017
DEBORAH S. HUNT, Clerk

In re: CITY OF DETROIT, MI,  )
)
Petitioner.  )  O R D E R
)

Before: CLAY, McKEAGUE, and DONALD, Circuit Judges.

In this inverse condemnation action, the City of Detroit petitions to appeal the summary judgment on liability in favor of Plaintiff HRT Enterprises ("HRT"). HRT opposes the petition to appeal.

"This court in its discretion may permit an appeal to be taken from an order certified for interlocutory appeal if (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re City of Memphis,* 293 F.3d 345, 350 (6th Cir. 2002) (citing 28 U.S.C. § 1292(b)); *see also In re Trump,* ___ F.3d ___, 2017 WL 4931963, at *1 (6th Cir. 2017). The factors set forth in § 1292(b) "should be treated as *guiding criteria* rather than *jurisdictional* requisites." *In re Trump,* 2017 WL 4931963, at *1 (citation omitted). "These criteria, along with other prudential factors, guide our discretion . . . ." *Id.* And we are mindful that review under § 1292(b) should be the exception, granted only in an extraordinary case. *See Kraus v. Bd. of Cty. Rd. Comm'rs,* 364 F.2d 919, 922 (6th Cir. 1966).

No. 17-0102

-2-

The district court certified the following question for appeal:   "[w]hether the district court's entry of summary judgment on liability in favor of [HRT] was appropriate in this inverse condemnation case based on the undisputed facts, and where the alleged date of taking has not yet been determined."  We are not convinced that there is a substantial ground for a difference of opinion as to the district court's ruling or that an immediate appeal may materially advance the termination of this protracted litigation.

Accordingly, the petition to appeal is **DENIED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

# EXHIBIT 2

525 Fed.Appx. 388
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals,
Sixth Circuit.

UNITED STATES of America, Plaintiff–Appellee,

v.

Raymond R. McMICHAEL, Defendant–Appellant.

No. 12–1072.
|
May 9, 2013.

**Synopsis**
**Background:** Following affirmance of his conviction for
conspiring to manufacture and distribute marijuana, 377
Fed.Appx. 529, defendant filed motion to vacate. The United
States District Court for the Eastern District of Michigan
resentenced defendant, and he appealed.

**Holdings:** The Court of Appeals held that:

[1] law of the case doctrine did not bar district court from not
granting departure for substantial assistance;

[2] doctrine of res judicata did not bar district court from not
granting departure for substantial assistance;

[3] vindictiveness in prosecutor's failure to move for
departure for substantial assistance;

[4] there was no presumption of judicial vindictiveness in the
district court's refusal to grant the downward departure;

[5] district court did not rely on clearly erroneous facts in his
characterization of the harmful effects of marijuana; and

[6] defendant's 150-month sentence was not substantively
unreasonable.

Affirmed.

West Headnotes (6)

[1]     **Criminal Law** 🔑 Mandate and proceedings
in lower court

The law of the case doctrine did not bar the
district court from determining that defendant
had not provided substantial assistance to the
government and thus he was not entitled
to receive the same downward departure at
resentencing as he did at his original sentence
for conspiring to manufacture and distribute
marijuana; at the first sentencing hearing the
court expressed skepticism as to the substantial
nature of defendant's assistance but granted the
motion at the request of the government, at
the second hearing, with the newly lowered
mandatory minimum sentence, the government
no longer believed the motion was warranted,
and it was within the court's discretion to
revisit its prior decision regarding defendant's
substantial assistance.

1 Cases that cite this headnote

[2]     **Res Judicata** 🔑 Res judicata and claim
preclusion

**Res Judicata** 🔑 Sentencing and punishment

Doctrine of res judicata did not bar the
district court from determining that defendant
had not provided substantial assistance to the
government and thus he was not entitled
to receive the same downward departure
at resentencing as he did at his original
sentence for conspiring to manufacture and
distribute marijuana, since the resentencing was
a continuation of the previous action, such that
there was no prior action between the parties to
consider.

1 Cases that cite this headnote

[3]     **Constitutional Law** 🔑 Resentencing

**Sentencing and Punishment** 🔑 Necessity of
motion by government

Prosecutor was not unreasonable to request that
a sentence identical to the original sentence

be imposed when resentencing defendant for conspiring to manufacture and distribute marijuana after expungement of prior conviction lowered his mandatory minimum sentence, and thus there was no realistic likelihood of vindictiveness, as would violate due process, in the prosecutor's failure to move for downward departure on the basis of substantial assistance, as had been requested at original sentencing; prosecutor felt the newly expunged conviction should be taken into account at resentencing and therefore did not believe defendant's sentence should be reduced any further, given that defendant had admitted to the activity underlying that conviction. U.S.C.A. Const.Amend. 5.

1 Cases that cite this headnote

[4]    **Constitutional Law**  Resentencing

**Sentencing and Punishment**  Right to appeal or other review

There was no presumption of judicial vindictiveness, as would violate due process, in the district court's refusal to grant a downward departure based on substantial assistance at defendant's resentencing for conspiring to manufacture and distribute marijuana, even though the court had granted the departure at original sentencing, where defendant was resentenced to 150 months, which was a reduction from his original 204 month sentence. U.S.C.A. Const.Amend. 5.

[5]    **Sentencing and Punishment**  Admissibility in General

District judge did not rely on clearly erroneous facts in his characterization of the harmful effects of marijuana when imposing 150-month sentence on defendant convicted of conspiring to manufacture and distribute marijuana. 18 U.S.C.A. § 3553(a); Comprehensive Drug Abuse Prevention and Control Act of 1970, § 202(c), 21 U.S.C.A. § 812(c).

[6]    **Conspiracy**  Marijuana, cannabis, and cannabinoids

**Sentencing and Punishment**  Sentence or disposition of co-participant or codefendant

**Sentencing and Punishment**  Nature, degree or seriousness of offense

**Sentencing and Punishment**  Extent of offender's participation

Defendant's 150-month sentence for conspiring to manufacture and distribute marijuana was not substantively unreasonable; district court gave sufficient justification for imposing a sentence above the 120-month mandatory minimum, noting that, unlike his co-defendants who received lower sentences, defendant was the leader of the organization distributing marijuana, court also took note of the fact that the marijuana sold was particularly potent, that defendant made a whole lot of money from the enterprise, and that defendant returned to illegal drug sales after receiving a pardon on a previous drug crime. 18 U.S.C.A. § 3553(a).

*390  BEFORE: BOGGS and COLE, Circuit Judges; QUIST, District Judge. *

**OPINION**

COLE, Circuit Judge.

**\*\*1**  Defendant–Appellant Raymond McMichael appeals the 150–month prison sentence imposed by the district court on January 4, 2012, at McMichael's resentencing hearing. We affirm.

I.

On May 28, 2005, McMichael pleaded guilty to a charge of conspiring to manufacture 1,000 or more marijuana plants in violation of 21 U.S.C. §§ 841 and 846. Although he was subject to a twenty-year mandatory minimum sentence because of a 1970 felony drug conviction, McMichael was

sentenced to imprisonment for 204 months—seventeen years—on June 23, 2008. This sentence reflected a downward departure as permitted under 🚩 18 U.S.C. § 3553(e) based on "substantial assistance" to the government in prosecuting another individual. This Court affirmed the sentence on direct appeal. *United States v. McMichael,* 377 Fed.Appx. 529 (6th Cir.2010).

Subsequently, McMichael obtained an order vacating and expunging his 1970 felony drug conviction and moved to vacate and expunge his 2008 sentence, pursuant to 28 U.S.C. § 2255. Because McMichael's prior drug conviction had been vacated, the enhancement provision mandating a twenty-year minimum sentence was no longer applicable. The government and McMichael stipulated that as a result the mandatory minimum sentence had been reduced from twenty years to ten years. On January 4, 2012, McMichael was resentenced by the district court to a term of 150 months. Because the district court at resentencing did not give McMichael a downward departure based on substantial assistance, the 2012 sentence was 30 months—two and a half years—longer than the 120 months mandated by statute. It was, however, four and a half years shorter than the initial 2008 sentence.

On appeal, McMichael argues that the district court erred at resentencing by declining to reapply the downward departure based on substantial assistance. First, he argues that res judicata and law of the case doctrine precluded the district court from choosing not to apply the downward departure. Second, he argues that the sentence should be set aside for prosecutorial and judicial vindictiveness. Finally, he **\*391** argues that his new sentence is procedurally and substantively unreasonable. We address these issues in turn.

II.

[1] At his original sentencing hearing, the district court granted McMichael a downward departure for substantial assistance in prosecuting another defendant. At resentencing, however, the district court determined that McMichael had not, in fact, provided substantial assistance to the government. McMichael therefore did not receive the same downward departure at resentencing. On appeal, McMichael argues that the factual determination regarding substantial assistance had been made at his first sentencing hearing, and the district court was barred by the law of the case doctrine from reconsidering the issue.

As a preliminary matter, the government argues that to the extent that McMichael argues that the district court should have granted a downward departure, this court has no jurisdiction to hear this appeal. We acknowledge that this Court has no authority to review a district judge's failure to depart below the statutory minimum so long as the sentencing court was aware that it had discretion to depart. 🏷️ *United States v. Tocco,* 306 F.3d 279, 295 (6th Cir.2002). McMichael argues, however, that whether or not he provided substantial assistance is a predicate issue which should be reviewable on appeal. We agree. "[T]he propriety of the court's reconsideration of its prior finding" is reviewed for abuse of discretion. 🏷️ *E.E.O.C. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, Local No. 120,* 235 F.3d 244, 250 (6th Cir.2000).

**\*\*2** The law of the case doctrine posits that when a court decides an issue, "that decision should continue to govern ... in subsequent stages in the same case." 🏷️ *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." 🏷️ *E.E.O.C.,* 235 F.3d at 249 (internal quotations omitted). The law of the case doctrine, however, is not an "inexorable command," *id.* at 250, it guides a court's discretion but "it is not improper for a court to depart from a prior holding if convinced that [the prior holding] is clearly erroneous and would work a manifest injustice," 🏷️ *id.* at 249.

With respect to issues traditionally within a trial court's discretion the law of the case doctrine is necessarily lenient: "The nature of the decision being reconsidered ... also mandates giving the ... court broad discretion.... Generally, a trial judge has broad discretion on evidentiary rulings because ... [r]igorously applying the law-of-the-case doctrine would undercut the broad discretion that traditionally has been accorded a trial court." 🏷️ *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990); *see also United States v. Williams,* 728 F.2d 1402, 1406 (11th Cir.1984) (emphasizing the flexibility of the doctrine). As with evidentiary decisions, district judges are afforded broad discretion in sentencing decisions. *See* 🏷️ *Gall v. United States,* 552 U.S. 38, 59–60, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). While the doctrine exists in order to discourage relitigation of issues

in a particular case, it cannot be applied rigidly, especially to matters in which district judges have wide discretion. The district court, at the first sentencing hearing, expressed skepticism regarding the "substantial" nature of McMichael's assistance. It granted the motion for substantial assistance, however, at the request of the government. At the second hearing, with the newly lowered **\*392** mandatory minimum sentence, the government no longer believed the motion was warranted. Therefore, it was within the discretion of the district court to revisit its prior decision regarding McMichael's substantial assistance.[1]

[2] The doctrine of res judicata is similarly inapplicable here. "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir.1995) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Here, however, the resentencing is a continuation of the previous action. There is no "prior action" between the parties to consider. Res judicata therefore does not apply.

Because the district court did not abuse its discretion in determining that McMichael did not provide substantial assistance, McMichael's first claim fails.

III.

**\*\*3** [3] At McMichael's resentencing hearing, the government asked that McMichael receive the same sentence, 204 months, that had been imposed at his original sentencing hearing. This was a request for a sentence 84 months—7 years—above McMichael's new mandatory minimum. At McMichael's original sentencing he received a sentence three years shorter than the mandatory minimum of 240 months—20 years—because the government had moved for a downward departure on the basis of substantial assistance. McMichael now argues that the new sentence should be set aside for prosecutorial vindictiveness based on the government's failure to move for a downward departure. We review this question of law de novo.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of

action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (citing *North Carolina v. Pearce,* 395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (opinion of Black, J., concurring in part and dissenting in part) (internal quotations and citations omitted). However, "the Due Process Clause is not offended by all possibilities of increased punishment ... but only by those that pose a realistic likelihood of vindictiveness." *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (internal quotations omitted). "A defendant alleging prosecutorial vindictiveness must show either actual vindictiveness or a realistic likelihood of vindictiveness." *United States v. Roach,* 502 F.3d 425, 443 (6th Cir.2007) (internal quotations and citation omitted). There is no evidence of actual vindictiveness in this case. Therefore, McMichael must show a realistic likelihood of vindictiveness. A realistic likelihood of vindictiveness is shown by demonstrating a prosecutor's "stake in deterring the exercise of a protected right" and the unreasonableness **\*393** of the prosecutor's conduct. *Id.* (quoting *United States v. Poole,* 407 F.3d 767, 774 (6th Cir.2005)); *see also* *United States v. Andrews,* 633 F.2d 449, 454 (6th Cir.1980). McMichael is unable to make this showing.

Even if McMichael could demonstrate the government's "stake" in this case, he cannot show that the prosecutor acted unreasonably. It is evident from the record that the prosecutor felt McMichael's newly expunged 1970 felony conviction should be taken into account at resentencing and therefore did not believe McMichael's sentence should be reduced any further:

[PROSECUTOR]: Now, what I'm trying to get across, Judge, is that even though the guideline range here is the statutory minimum of 120 months, there are good reasons not to impose a sentence of 120 months. A sentence of 120 months would be required of a defendant in Mr. McMichael's position who had not been arrested at all in 1970. But Mr. McMichael was arrested in 1970, served a term of imprisonment. He was clearly— he admits he was involved with

marijuana. He is just denying now that his conviction was validly imposed.

**\*\*4** McMichael argues that the prosecutor's failure to seek a downward departure for substantial assistance demonstrates that he was acting vindictively. However the transcript makes it clear that the prosecutor believed that the new statutory minimum was too low given McMichael's admissions to the 1970 activity—an argument which is entirely permissible and reasonable at sentencing. *See* *United States v. Watts,* 519 U.S. 148, 154–56, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Milton,* 27 F.3d 203, 208–09 (6th Cir.1994) (holding that a sentencing court may consider all relevant offenses during sentencing including conduct for which a defendant has been acquitted). In the prosecutor's view, the statutory minimum had been lowered but no relevant facts had changed about McMichael since the first sentencing hearing. Given that the prosecutor made clear his belief that the new statutory minimum was not appropriate, he was not unreasonable to request, based on the 1970 offense, that a sentence identical to the original sentence be imposed. A prosecutor has discretion to determine when to move for a downward departure based on substantial assistance, subject only to constitutional limitations. *Wade,* 504 U.S. at 185–86, 112 S.Ct. 1840. If the prosecutor did not believe McMichael deserved a lower sentence he was not unreasonable to decline to renew the motion for a downward departure. Because McMichael cannot demonstrate unreasonableness he has failed to show a realistic likelihood of vindictiveness.

### IV.

[4] McMichael also argues that the district court's refusal to grant a downward departure based on substantial assistance violated his Fifth Amendment due process rights because it had the appearance of judicial vindictiveness. This argument also fails. A presumption of judicial vindictiveness does not arise when a defendant is resentenced to an equal or shorter term than the original sentence. *United States v. Rodgers,* 278 F.3d 599, 604 (6th Cir.2002). In 2012 McMichael was sentenced to 150 months, a reduction from his original 204 month sentence. Therefore no presumption of judicial vindictiveness arises in this case.

### V.

Finally, McMichael argues that the sentence imposed by the district court was procedurally and substantively unreasonable. We review both issues under the abuse of discretion standard. *United States v. O'Georgia,* 569 F.3d 281, 287 (6th Cir.2009).

### \*394 A.

[5] McMichael argues that the sentence was procedurally unreasonable because the district court failed to consider his substantial assistance and improperly focused on the harmful effects of marijuana. A sentence is procedurally unreasonable "if it is marked by significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence...." *United States v. Houston,* 529 F.3d 743, 753 (6th Cir.2008) (quoting *Gall,* 552 U.S. at 51, 128 S.Ct. 586) (internal quotations omitted).

**\*\*5** The district court had no obligation to give McMichael a downward departure for substantial assistance. As noted above, the district court was not bound by its prior decision. The court discussed the issue during the resentencing hearing, stated that it did not feel that McMichael's assistance was "substantial," and noted that it had no authority to grant the departure without a government motion. We find no abuse of discretion here.

Furthermore, the district judge did not rely on clearly erroneous facts in his characterization of the harmful effects of marijuana. Congress has classified marijuana as a Schedule I controlled substance under the Controlled Substances Act. *See* 21 U.S.C. § 812(c). "Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales v. Raich,* 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). While the parties agree that there are disputes regarding the impacts of marijuana, those disputes are not sufficient to find that the

district court relied on plainly incorrect facts in sentencing McMichael.

### B.

[6]    McMichael also argues that the new sentence is substantively unreasonable. "A sentence may be substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent 🚩 § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor.... For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of 🚩 § 3553(a)." 🏳️⚠️ *United States v. Vowell,* 516 F.3d 503, 510, 512 (6th Cir.2008) (internal quotations, alterations and citations omitted).

We do not find that the district court abused its discretion by imposing a 150–month sentence. McMichael argues that "[t]he existence of a 120 month mandatory minimum sentence necessarily reflects a legislative finding that a 120 month sentence adequately reflects the seriousness of the offense and provides just punishment." One hundred twenty months, however, is only the minimum sentence and does not provide for "just punishment" in all circumstances. When taking into account the 🚩 § 3553(a) factors, a district court has discretion to enhance the sentence above the mandatory minimum to account for the circumstances of a particular crime. 🏳️ *Gall,* 552 U.S. at 59–60, 128 S.Ct. 586.

Here, the district court gave sufficient justification for imposing a sentence above the minimum. The court noted that, unlike McMichael's co-defendants who received lower sentences, McMichael was the leader of the organization distributing marijuana. The court also took note of the fact that the marijuana at issue was particularly potent, that McMichael made a **\*395** "whole lot of money" from the enterprise, and that McMichael returned to illegal drug sales after receiving a pardon on a previous drug crime. The court also considered the stable family life in which McMichael was raised.

**\*\*6**  On abuse-of-discretion review, we will give "due deference to the district court's reasoned and reasonable decision that the 🚩 § 3553(a) factors, on the whole, justified the sentence." 🏳️⚠️ *Vowell,* 516 F.3d at 512 (quoting 🏳️ *Gall,* 552 U.S. at 59–60, 128 S.Ct. 586)(alterations omitted). The district court gave adequate consideration to the 🚩 § 3553(a) factors to justify a sentence 30 months above the Guidelines range.

### VI.

For the foregoing reasons, the sentence imposed by the district court is affirmed.

**All Citations**

525 Fed.Appx. 388, 2013 WL 1924504

---

### Footnotes

\*    The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

1    We note that it is not clear that the district court even had discretion to apply the prior substantial assistance decision without a motion from the government. 🚩 18 U.S.C. § 3553(e) "imposes the condition of a Government motion upon the district court's authority to depart." 🏳️ *Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). The government did not renew its motion for substantial assistance, therefore, the court may not have had the authority to grant McMichael a downward departure for substantial assistance at resentencing.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 3

U.S. v. Houston, Not Reported in F.Supp.3d (2015)

2015 WL 6449519

2015 WL 6449519
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.

UNITED STATES of America, Plaintiff,
v.
Clifford Leon HOUSTON, Defendant.

No. 3:13–CR–10.
|
Filed Oct. 26, 2015.

**Attorneys and Law Firms**

David C. Jennings, U.S. Department of Justice, Knoxville, TN, for Plaintiff.

Mike Whalen, Law Office of Mike Whalen, Knoxville, TN, for Defendant.

**MEMORANDUM AND ORDER**

C. CLIFFORD SHIRLEY, JR., United States Magistrate Judge.

**\*1** This case came before the Court on October 15, 2015, for a motion hearing on Mr. Houston's Motion to Recuse Assistant United States Attorney David Jennings [Doc. 334] and Mr. Houston's Motion to Preclude Evidence: Testimony of Cody Linds[e]y [Doc. 335],[1] both filed on October 4, 2015. *See* 28 U.S.C. § 636(b). Assistant United States Attorney David C. Jennings appeared on behalf of the Government. Attorney Mike Whalen appeared with the Defendant, who was also present. After careful review of the motions, responses, arguments, and relevant law, the Court finds that the Defendant's motions should be denied.

**I. MOTION TO RECUSE AUSA JENNINGS**

The Defendant moves the Court to recuse AUSA Jennings because he contends that Mr. Jennings is obsessed with the Defendant's guilt in the shooting of a Roane County officer and his ride-along volunteer ("the Roane County shootings"), despite the Defendant's acquittal of these crimes by two juries. The Defendant argues that Mr. Jennings' obsession violates the American Bar Association's ethical standards

for prosecutors, who are not to have any political, financial, business, property, or personal interest that would affect his or her professional judgment in a case. The Defendant maintains that AUSA Jennings has a personal interest in this case stemming from his deeply held animosity toward the Defendant.

The Government responds [Doc. 336] that the Defendant has failed to present any legitimate basis for recusal of AUSA Jennings. It states that it will retry this case in accordance with the requirements of the Court of Appeals for the Sixth Circuit's appellate opinion and that Mr. Jennings' beliefs about the Defendant's guilt or innocence of the Roane County shootings have no bearing upon this trial. The Government contends that it will not present any evidence of the Roane County shootings to the jury in this trial. However, it maintains that if the Defendant is again convicted, it will advise the District Judge at sentencing about the Roane County shootings because they bear upon the Defendant's characteristics and danger to the community.

At the October 15 hearing, Mr. Whalen advanced another example, which he claims reveals AUSA Jennings' personal interest in the Defendant's conviction. He argued that Mr. Jennings did not object when District Judge Danny Reeves dismissed the Defendant's elbow counsel before the trial of the Defendant's 18 U.S.C. § 875(c) charge ("the threat charge"). Mr. Whalen contended that Jennings' failure to object reveals that he sought an unfair advantage over the Defendant, who represented himself without the guidance of elbow counsel. Mr. Whalen also argued that AUSA Jennings' argument at sentencing about the Defendant's involvement in the Roane County shootings resulted in a sentence that was triple the higher end of the Defendant's guideline range. He stated that Mr. Jennings' focus on the Roane County shootings, despite the Defendant's two-time acquittal in state court, demonstrates that Mr. Jennings has a personal issue with the Houston brothers that he has allowed to color his judgment in this case. Mr. Whalen stated that he raised this sentencing issue on appeal but that the appellate court remanded on the jury instruction issue and did not address the sentencing issue.

**\*2** AUSA Jennings argued that although he had reviewed the evidence in the Roane County shootings and believed that it supported a conviction, the instant prosecution was not driven by his belief regarding the Defendant's guilt in these murder cases. He stated that it is his duty to be zealous at sentencing and to present evidence that shows the Defendant to be a

dangerous man. He stated that he planned to present the same evidence in the instant retrial that he did in the first trial on the threat charge.

Typically, the Court does not look to the motivations of the individual prosecutor for prosecuting a particular defendant when a grand jury has returned a valid indictment. In other words, the grand jury—a group of independent citizens looking at the evidence-stands as the defendant's protection against a zealous, or potentially overly zealous, prosecutor. Moreover, a prosecutor's firm belief in a defendant's guilt seems appropriate in a case that proceeds to trial. *See* Marshall v. Jerrico, Inc., 446 U.S. 238, 248, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (observing that "[p]rosecutors need not be entirely 'neutral and detached' "). In fact, the converse situation-an assistant United States attorney prosecuting a defendant whom he or she believes to be innocent—would seem to be the more sinister possibility. However, certain personal interest in the outcome of an investigation or prosecution can serve to disqualify a prosecutor:

> The Attorney General shall promulgate rules and regulations which require the disqualification of any officer or employee of the Department of Justice, including a United States attorney or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof....

28 U.S.C. § 528. A common type of personal interest that can create a conflict of interest for a prosecutor stems from the prosecutor's prior representation of a defendant, witness, or victim. *See, e.g.,* Goff v. Bagley, 601 F.3d 445, 463 n. 7 (6th Cir.2010) (determining that prosecutors who previously served as defendant's guardians ad litem did not have a conflict of interest because they learned no information while representing the defendant that they could have used against him); United States v. Brooks, 41 F. App'x 718, 722 (6th Cir.2002) (holding that prosecutor not disqualified

despite prior employment in federal defender's office while it represented the defendant on an unrelated charge).

"[T]raditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which the enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law." Marshall, 446 U.S. at 249. It is the duty of the prosecutor to seek the truth, rather than to pursue a conviction doggedly:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*3 Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In this respect, the Court must examine whether the prosecutor's alleged "obsession" caused him to pursue improper methods to achieve Defendant Houston's conviction. *See* United States v. Gotti, 782 F.Supp. 737, 745–46 (E.D.N.Y.1992) (rejecting the defendant's argument that the prosecutor should be disqualified from a subsequent trial due to the prosecutor's alleged "intense personal interest" in the defendant's prosecution and conviction).

In the instant case, the Defendant argues that AUSA Jennings has a personal conflict of interest because, according to the Defendant, Mr. Jennings is obsessed with his belief that the

Defendant is guilty of two murders of which the Defendant was acquitted. The implication of the Defendant's argument is that Mr. Jennings would go to any length, even to the extent of using improper methods, to gain the Defendant's conviction in the instant case. In support of this, the Defendant points to Mr. Jennings' arguments at his sentencing hearing and to Mr. Jennings' failure to object to District Judge Danny Reeves' dismissal of Defendant's elbow counsel Charles Poole. The Court finds that whatever Mr. Jennings' beliefs about the Defendant's guilt with regard to the Roane County shootings, it does not find that Mr. Jennings acted improperly to gain the Defendant's conviction in the first trial of the threat count.

First, Mr. Jennings' reference to the Roane County shootings at sentencing has no bearing upon the fairness of the Defendant's conviction. Mr. Jennings stated that the Government did not bring up the Roane County shootings in the first trial on the threat charge, nor does it plan to reference those shootings in the retrial.[2] Whether the Defendant's involvement in the Roane County shootings is properly considered in determining the Defendant's sentence is both hypothetical at this point and also a matter for the District Judge to determine if the Defendant is convicted again. In any event, the Court does not find that Mr. Jennings argument on the Roane County shootings at sentencing reveals that he used improper methods to gain the conviction for which Defendant Houston was sentenced. Mr. Jennings has legitimate arguments, based upon the law and the sentencing guidelines, for the relevance of the Roane County shootings to the Defendant's sentence. Defense counsel has legitimate arguments for why the Roane County shootings are irrelevant. If following the retrial of this case, a sentencing hearing is held, counsel may make these arguments to the District Judge. Thus, the Court agrees with the Government that Mr. Jennings' belief that the Defendant's actions in the Roane County shootings are relevant at sentencing has no bearing upon whether he should be disqualified from prosecuting the Defendant.

Second, the Court finds that the question of whether Mr. Jennings should have objected to the District Judge's dismissal of Mr. Poole, the Defendant's elbow counsel, is somewhat academic, because the Sixth Circuit has remanded this case for retrial of the threat charge and the Defendant has counsel for the coming retrial. Nevertheless, the Court finds that the events surrounding the dismissal of Mr. Poole do not suggest that Mr. Jennings was seeking an improper advantage over the Defendant in the first trial. Resolution

of this issue requires a brief review of the history of the Defendant's representation in this case.

*4 The Defendant's representation in the two trials arising out of the Superseding Indictment has a long and rocky history. The Court initially appointed [Doc. 4] Attorney Joseph Fanduzz to represent the Defendant. The Defendant subsequently sought and was permitted [Docs. 37 & 38] to represent himself, with the assistance of different elbow counsel, Attorney Charles Poole. When the Defendant was charged with a second count, in the Superseding Indictment, he sought to represent himself on Count One and have counsel appointed to represent him on Count Two. The Court denied [Doc. 99] this request, holding that the Defendant must either represent himself with regard to the entire case or be represented with regard to the entire case. The Defendant chose the former option, and Mr. Poole remained on the case as elbow counsel. The Defendant moved [Doc. 93] to dismiss or substitute Mr. Poole, but withdrew [see Doc. 99] this motion.

On July 18, 2013, the undersigned ruled [Doc. 135] that the two counts of the Superseding Indictment were improperly joined and should be severed for separate trials. At that time, the Court granted the Defendant's request for counsel to represent him in the separate trial of the 18 U.S.C. § 875(c) charge. The Court appointed Mr. Poole to represent the Defendant in this second trial, as he was already familiar with the case. On September 6, 2013, the Court denied [Doc. 195] the Defendant's request for substitution of Mr. Poole, finding no basis for the substitution of counsel. On October 18, 2013, the Court again denied [Doc. 221] the Defendant's request for substitution of Mr. Poole in his capacity as elbow counsel, concluding that elbow counsel served at the Court's discretion, rather than the Defendant's; that Mr. Houston was under no obligation to use Mr. Poole's assistance; and that Mr. Poole would continue to serve as elbow counsel on Count One in the event that termination of self-representation became necessary. On November 4 through 6, 2013, Defendant Houston represented himself in the trial of Count One, with Mr. Poole serving as elbow counsel. The jury acquitted [Doc. 246] the Defendant of Count One, being an unlawful user of a controlled substance in possession of a firearm.

On November 14, 2013, four days before the start of the trial on the threat charge, the Defendant filed a Notice [Doc. 256] that he would be representing himself at that trial. District Judge Danny Reeves addressed this Notice on the first day of trial, informing the Defendant that if he decided to represent

himself, the Court would discharge Mr. Poole. [Doc. 293, p. 4–5] The Defendant asked why he was not allowed the assistance of counsel. [Doc. 293, p. 7] District Judge Reeves responded that the Defendant must make a decision to either represent himself or to have an attorney represent him and that the Court had determined that standby counsel is not necessary in the trial of Count Two, if the Defendant chose to represent himself. [Doc. 293, pp. 7–8] Judge Reeves stated that the Defendant was seeking hybrid representation, which the Court was not going to allow. [Doc. 293, p. 8] In response to additional questions by the Defendant, Judge Reeves stated that the Defendant could request the appointment of counsel for an appeal, but that "it's your decision at this point as to whether you want to represent yourself during the trial on Count Two or whether you want to have Mr. Poole represent you. It can't be half and half." [Doc. 293, p. 9] The Defendant stated that he wanted to represent himself, and Judge Reeves excused Mr. Poole and found that the defendant had knowingly and voluntarily made this decision. [Doc. 293, p. 9] On December 23, 2013, the Defendant moved [Doc. 288] for the appointment of counsel for sentencing and post-trial motions. On January 27, 2014, the undersigned granted [Doc. 296] this motion and appointed current defense counsel to represent the Defendant.

**\*5** While it is true that Mr. Jennings did not object to the District Judge's ruling that the Defendant could not have elbow counsel, if he chose to represent himself, the Court finds that the Defendant essentially objected to this determination and the District Judge explained the reason for his ruling. The Court observes that a defendant is not constitutionally entitled to elbow counsel while representing himself. *See United States v. Collins,* 129 F. App'x 213, 217 (6th Cir.2005) (concluding that "when a defendant asserts his right to self-representation, he necessarily waives his right to counsel"); *United States v. Mosely,* 810 F.2d 93, 97 (6th Cir.1987) (observing that a defendant may either represent himself or, alternatively, be represented by counsel, but has no right to hybrid representation). Instead, elbow counsel is appointed at the court's discretion. *See McKaskle v. Wiggins,* 465 U.S. 158, 176 (1984) (observing that the court may appoint elbow counsel over the defendant's objection). While the undersigned finds that the appointment of elbow counsel to assist a *pro se* defendant is generally preferable because elbow counsel assists both the defendant and the court, such appointment is not required. The Defendant knew that if he chose to represent himself, he would not have the assistance of Mr. Poole. The Court finds that Mr. Jennings failure to

object does not reveal that he gained, or even sought to gain, an improper advantage over the Defendant.

The Court finds no basis to disqualify Mr. Jennings from participating in the retrial of the threat charge. Not only did Mr. Jennings not seek to litigate the Roane County shootings at the trial of the threat charge, he expressly sought to preclude any reference to the Roane County shootings at that trial. Regardless of what AUSA Jennings thinks about the Defendant's role in the Roane County shootings, the Court finds that the Defendant has failed to show that he has any inappropriate personal interest in this case. Mr. Houston's Motion to Recuse Assistant United States Attorney David Jennings [**Doc. 334**] is **DENIED.**

## II. EXCLUSION OF TESTIMONY
## OF CODY LINDSEY

Pursuant to Federal Rules of Evidence 403 and 404(b), the Defendant also moves [Doc. 335] the Court to exclude the testimony of Blount County Sheriff's employee Cody Lindsey because it is irrelevant, unfairly prejudicial, and invites the jury to decide that the defendant is guilty in conformity with a character trait. The Government opposes [Doc. 337] the exclusion of Lindsey's testimony, arguing (1) the admissibility of this testimony was already determined in the first trial of the threat charge and, therefore, constitutes the law of the case and (2) it comes within an exception to Rule 404(b).

In the first trial of the threat charge, the Government called Blount County Sheriff's employee Cody Lindsey, who was a jailer at the jail where the Defendant was detained pending his trial on the Indictment. [Doc. 293, p. 124] Jailer Lindsey testified that on February 9, 2013, the day before the alleged telephonic threat in this case, he overheard[3] the Defendant, whom Lindsey characterized as being in a rage, make comments about going to a law firm and killing everyone there. [Doc. 293, pp. 124, 126–27] The Government filed a Notice of Intent to Use Rule 404(b) Evidence [Doc. 250] with regard to this testimony. District Judge Danny Reeves conducted a hearing outside the presence of the jury and permitted both parties to question Jailer Lindsay to determine whether his testimony was precluded by Rule 404(b). Judge Reeves found that Jailer Lindsey's testimony was admissible without a limiting instruction. [Doc. 293, p. 130] Judge Reeves determined that Lindsey's testimony was relevant to whether the Defendant made an intentional threat and to

U.S. v. Houston, Not Reported in F.Supp.3d (2015)

2015 WL 6449519

demonstrate that the telephonic threat was not just "an off-hand or flippant comment[.]" [*Id.*]

**\*6** The Court looks first to whether the parties are bound by Judge Danny Reeves' ruling on the admissibility of this evidence in the retrial because it is the law of the case. "Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994). The Court is also bound by the mandate of the appellate court. *Id.* (observing that the "the mandate rule, requires lower courts to adhere to the commands of a superior court"). "The law of the case doctrine and the mandate rule generally preclude a lower court from reconsidering an issue expressly or impliedly decided by a superior court." *Id.* "[T]he law of the case doctrine dictates that issues, once decided, should be reopened only in limited circumstances, e.g., where there is 'substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice.' " *Id.* (quoting *Petition of United States Steel Corp.,* 479 F.2d 489, 494 (6th Cir.1973)). However, our appellate court has recognized that the law of the case doctrine does not bind a trial court to the evidentiary rulings previously made in the case because such decisions "turn[ ] upon the evidence as developed during the course of a trial." *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990); *United States v. McMichael,* 525 F. App'x 388, 391 (6th Cir.2013) (quoting *Todd* ). "Rigorously applying the law-of-the-case doctrine would undercut the broad discretion that traditionally has been accorded a trial court in [evidentiary] matters." *Todd,* 920 F.2d at 403. Thus, the Court finds that, even though the Government does not intend to offer substantially different evidence with regard to Jailer Lindsey's testimony, the District Judge may again assess the admissibility of Jailer Lindsey's testimony at the retrial.

The Court also finds that revisiting the admissibility of Jailer Lindsey's testimony does not violate the mandate rule. The Sixth Circuit "reverse[d] Houston's conviction and remand[ed] the case for further proceedings." [Doc. 320, p. 10] It did not discuss the admissibility of Lindsey's testimony, but only ruled on the propriety of the jury instructions. Thus, the Court may determine the admissibility of Lindsey's testimony without running afoul of the mandate rule.

Next the Court turns to the question of the admissibility of Jailer Lindsey's testimony under Rules 403 and 404(b) of the Federal Rules of Evidence. Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). However, exceptions to this rule exist, which permit the admission of evidence that would ordinarily be excluded by rule 404(b)(1): "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b)(2). The Government argues that the Defendant's intent is an element of the crime and remains an issue in the retrial. It contends that Jailer Lindsey's testimony shows the Defendant's mental state the day before he made the threat, with which he is charged. The Defendant argues that this evidence is prohibited by Rule 404(b)(1) and does not fall within one of the exceptions of Rule 404(b)(2). He contends that the fact that the Defendant was upset on February 9 does not show his intent during a telephone call on the following day.

**\*7** The Defendant is charged with a violation of 18 U.S.C. § 875(c), which states "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injury the person of another, shall be fined under this title or imprisoned not more than five years, or both." As our appellate court discussed, *United States v. Houston,* 792 F.3d 663, 667 (6th Cir.2015), the Supreme Court in *United States v. Elonis,* determined that assessment of a violation of section 875(c) could not turn on a negligence standard. —— U.S. ——, ——, 135 S.Ct. 2001, 2011, 192 L.Ed.2d 1 (2015). Instead, "the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 2012 (also observing that a mental state of recklessness could potentially suffice). Thus, the Government must prove that the Defendant intended or, at least, knew that the February 10 telephone call would be viewed as a threat. The fact that the Defendant stated in his jail cell the day before the crime alleged that when he got out of jail, he would go to "that law firm" and kill them all makes it more likely that he intended the February 10 telephone call as a true threat, rather than that he was merely venting. The Court finds that Lindsey's testimony is admissible under Rule 404(b)(2) to show the Defendant's intent and the absence of mistake.

U.S. v. Houston, Not Reported in F.Supp.3d (2015)
2015 WL 6449519

Even though Jailer Lindsey's testimony is admissible under Rule 404(b)(2), it can still be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. The Defendant argues that Lindsey's testimony will confuse the jury, which could be misled about which threat—the one on February 9 or the one on February 10—they are evaluating. The Court finds that the jury is capable of separating the Defendant's statements on February 9 from his statements on February 10. Moreover, the undersigned determines that admission of his statements the previous day will not unfairly prejudice the Defendant. Although Judge Danny Reeves found that no limiting instruction was necessary with regard to Lindsey's testimony, the Court observes that an instruction to the jury that it should consider the testimony with regard to the Defendant's statements on February 9, 2013, only as to the Defendant's intent during the telephone call on February 10, would help insure that this evidence is properly considered. The Defendant may ask District Judge Pamela Reeves for such an instruction at the retrial, if he so chooses.

Accordingly, the Court finds that Jailer Lindsey's testimony is admissible under Rule 404(b)(2) and should not be excluded under Rule 403. However, the Court also finds that evidentiary questions are best determined within the context of the trial. Thus, the Defendant is free to challenge Lindsey's testimony before the District Judge at trial. Mr. Houston's Motion to Preclude Evidence: Testimony of Cody Linds[e]y [Doc. 335] is DENIED without prejudice to raise the issue again at the retrial of this matter.

**\*8** Accordingly, it is ORDERED:

(1) Mr. Houston's Motion to Recuse Assistant United States Attorney David Jennings [Doc. 334] is **DENIED,** and

(2) Mr. Houston's Motion to Preclude Evidence: Testimony of Cody Linds[e]y [Doc. 335] is **DENIED** without prejudice to raise the issue again at the retrial of this matter.

**IT IS SO ORDERED.**

All Citations

Not Reported in F.Supp.3d, 2015 WL 6449519

## Footnotes

1   The trial transcript indicates that the correct spelling of this witness's name is "Lindsey." [Trans., Doc. 293, p. 124]

2   In fact, before the trial of the threat charge, the Government filed a motion *in limine* [Doc. 255] asking the Court to order the Defendant from referring to irrelevant and extraneous evidence and/or comments, including any reference to the Roane County shootings. This motion was granted [*see* Trans., Doc. 293, p. 18].

3   Officer Lindsay testified that he overheard the Defendant by monitoring him on the intercom system that allowed him to listen to the Defendant's cell from the control room. [Doc. 293, p. 125] The Defendant contends that Officer Lindsay violated his privacy interest in speaking to himself while locked in a small room. The Defendant presented no evidence on the context of his statements on February 9, 2013—whether he was in an open cell, who else was in the cell, whether the Defendant knew that jailers had the ability to listen to his conversations, etc. Thus, the Court declines to take up any "privacy interest" argument.

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.