UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HRT ENTERPRISES, a Michigan Partnership, | Case No. 2:12-cv-13710 |
| | Honorable David M. Lawson |
| Plaintiff, | |
| v. | |
| CITY OF DETROIT, a Michigan municipal corporation, | |
| Defendant. | |

_____

**DEFENDANT'S BRIEF AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**
_____

The City has contended throughout this case that Plaintiff's claims are barred by res judicata and because there is no legal or factual support for plaintiff's claim of a "taking." The City reserves all arguments with respect to its previous arguments. Whether claims are justiciable, however, is a different question from whether claims might otherwise succeed.

This Court lacks subject matter jurisdiction over this case because Plaintiff's regulatory takings claims are not ripe for adjudication. There has been no final decision by the City to take or otherwise dispose of the property located at 11111 and 11181 French Road, Detroit, Michigan. Plaintiff's case is premised on

speculation that the City must take Plaintiff's property at some future date to comply with federal regulations. Such speculation is both wrong and cannot serve as a basis to invoke an Article III Court's subject matter jurisdiction. For the reasons explained below, the Court should dismiss this action for want of subject matter jurisdiction.

The undersigned had a telephone conference with opposing counsel where the basis for the present motion was explained. Opposing counsel did not concur in the relief requested in this motion.

## I.     BACKGROUND

The City of Detroit owns and operates an airport on the east side of Detroit. Compl. ¶ 1. Plaintiff alleges it owns eleven acres of land located at 11111 and 11181 French Road, Detroit, Michigan (the "Property").

### A.     Procedural Background.

Plaintiff brought a state court inverse condemnation action. In that action, Plaintiff argued that the City was required to purchase the Property. In 2005, the state court jury returned a no-cause-of-action verdict in favor of the City. The Michigan Court of Appeals affirmed, *HRT Enterprises v. City of Detroit*, No. 304057, 2012 WL 3055221, at *2 (Mich. Ct. App. July 26, 2012), and the Michigan Supreme Court denied leave to appeal, *HRT Enters. v. City of Detroit*, 480 Mich. 1134 (2008).

In 2012, Plaintiff filed the present case. Plaintiff's Complaint asserts four counts: Count I "De Facto Taking" alleging the City's actions deprived the Plaintiff of all economically viable use of its property and entitled the Plaintiff to just compensation (ECF No. 1, PageID.20, ¶ 117); Count II "Inverse Condemnation Unreasonable Delay" alleging the City's actions deprived the Plaintiff of all economically viable use of its property and entitled the Plaintiff to just compensation (ECF No. 1, PageID.21, ¶¶ 123-125); Count III "Inverse Condemnation Regulatory Taking" alleging the City's actions deprived the Plaintiff of all economically viable use of its property and entitled the Plaintiff to just compensation (ECF No. 1, PageID.23, ¶ 132); and Count IV "Substantive Due Process" alleging the City's actions inversely condemned Plaintiff's property and entitled it to compensation. (ECF No. 1, PageID.3085).

The City moved to dismiss Plaintiff's claims arguing that Plaintiff failed to exhaust state remedies, and it argued the doctrine of res judicata stemming from the 2005 jury verdict barred the present action. Plaintiff took the position that actions arising after the 2005 jury verdict formed the basis of Plaintiff's new federal claims. (ECF No. 22, PageID.878-79.). The Court found the exhaustion requirement had been satisfied, and it ruled that res judicata did not bar this action because of the facts alleged in this case occurred after the state court jury's 2005 verdict. (ECF No. 22, PageID.888). The Court denied the City's motion to dismiss, ruling that "events

3

that have occurred since 2005, when a state court jury determined that HRT did not have a takings claim, present a question of fact as to whether a taking has now occurred." (*Id*. at PageID.889).

Plaintiff subsequently filed a motion for summary judgment on liability. Judge Cohn granted Plaintiff's motion with respect to a regulatory taking, only. (ECF No. 63, PageID.63). The Court's Memorandum and Order is not explicit on which claims the Court granted summary judgment. In context, however, it is clear that HRT's motion for summary judgment sought relief for a regulatory taking. Whether this was under the regulatory taking claim or the "de facto" claim is unclear. The issue addressed in that motion was "when the cumulative effect of the City's actions tipped the balance and ripened into an inverse condemnation claim." Pl. Mot. at PageID.1009; *see also* Trial Tr. Vol. I at PageID.7922. In other words, a balancing analysis was required. The Court recognized as much when it quoted the motion, "It is not possible to determine when the cause of action accrues without a detailed examination of the facts of the case." Trial Tr. Vol. I at PageID.7922 (quoting Pl. Mot. at PageID.1009). And the Court's ruling explained that "[a] claim of regulatory taking under federal law is therefore characterized by essentially ad hoc, factual inquiries." *HRT Enterprises v. City of Detroit*, No. 12-13710, 2015 WL 4771118, at *6 (E.D. Mich. Aug. 13, 2015) (cleaned up)). The Court granted summary judgment on the regulatory claims, only.

4

### B. Factual Background.

There is only one final decision by the City affecting the Property relevant to this case. There is a 1996 Airport Layout Plan, which *does not* approve taking HRT's property.

There are other restrictions on the Property. The Property is subject to Federal Aviation Administration ("FAA") regulations, such as 14 C.F.R. § 77.1, *et seq.* ("Part 77"), which regulates potential air navigation obstructions. The FAA Part 77 regulation is a federal regulation, not a City ordinance. Part 77 also has no enforceable legal effect. It is advisory in nature. *Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 966 (D.C. Cir. 1979).

The Property is also subject to the Tall Building Act, MCL 259.481, *et seq.*, which is a state law, not a City ordinance. There is a 2009 Airport Layout Plan, but as this Court has recognized repeatedly, that plan is not final. *See HRT Enterprises v. City of Detroit*, 524 F. Supp. 3d 713, 716 (E.D. Mich. 2021) ("As of 2015, the only approved Airport Layout Plan on file with the FAA and the State was the 1996 Plan.").

Plaintiff has also not sought and been denied a building permit such that the City's zoning ordinances might be at issue. HRT sought a permit in 2002. The City issued the permit noting that any building over 35 feet at the front of the Property

would not be reimbursed should the Property be taken. That permit went unused, and it expired in 2003.

## II. STANDARD OF REVIEW

Plaintiff's claims are not ripe for adjudication because there is no final decision by the City to take the Property. The "ripeness doctrine arises 'both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *In re Cassim*, 594 F.3d 432, 437 (6th Cir. 2010) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The ripeness doctrine protects against "judicial interference until a[ ] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). An Article III court cannot entertain a claim which is based upon "contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge a court's jurisdiction over the subject matter of a claim at any time. When the defendant files a motion pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction. *Ladd v. Marchbanks*, 971 F.3d 574, 577 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1390 (2021) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015)). "A court lacks jurisdiction over the subject matter if the

claim is not yet ripe for judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). Put another way, "[r]ipeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Michigan Dept. of Natural Resources*, 970 F.2d 154, 157 (6th Cir. 1992) (internal quotes and citations omitted). Because ripeness is a jurisdictional issue, it may be raised at any time, even for the first time on appeal. *Reno*, 509 U.S. at 57 n.18.

The City's Rule 12(b)(1) motion attacks the factual existence of subject matter jurisdiction. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (explaining a Rule 12(b)(1) motion can mount a facial attack or factual attack)). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id*. at 759-760.

### III. ARGUMENT

Plaintiff's claims proceedings to trial are all variations of regulatory takings claims. However, Plaintiff's regulatory takings claims are not justiciable, specifically they are not ripe for adjudication because there is no final decision from the City to take the Property or regulation that achieves the same effect. Whether

7

claims are justiciable is a different question from whether claims might otherwise succeed on the merits. *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 387 (6th Cir. 2022). Plaintiff's claims are not justiciable and should, therefore, be dismissed.

### A. This Case is Limited to a Regulatory Taking.

The claims proceeding to trial are regulatory taking claims. The Supreme Court recognized regulatory takings, as compared to physical takings, in *Pennsylvania Coal Co. v. Mahon*. 260 U.S. 393 (1922). Pennsylvania enacted a statute restricting the removal of all coal from certain property to prevent sink holes caused by the mining. *Id.* at 412. The Court explained that the exercise of the police power can diminish "to some extent values incident to property" without implicating the takings clause, because the government could not function if it had to compensate every person whose property was diminished in some manner by government regulation. *Id*. at 413. However, "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.* at 415. The question is what is "too far?"

The common touchstone of regulatory takings precedent is "to identify *regulatory actions* that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 539 (2005) (emphasis added).

8

Regulation is not a taking simply because it decreases the value of the property. Two tests are used to evaluate whether a regulatory taking has occurred:

> Where a governmental action deprives property owners of 'all economically beneficial uses' of their property, it is a categorical regulatory taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). In all other cases—that is, where the property is not rendered valueless—the Court uses the balancing test of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

*Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009) (citing *Tahoe–Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002)); *see also Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 471 (6th Cir. 2021) (explaining "total regulatory taking" approach under *Lucas* as compared to the multi-factor *Penn Central* standard).

In *Lucas*, after a person purchased beach-front property for approximately $1 million with the intent to construct single-family homes, the State enacted legislation requiring the land to be substantially left in its natural state. *Lucas*, 505 U.S. at 1018. The Court found that where a regulation "deprives land of all economically beneficial use," a regulatory taking has occurred, so long as the proscribed use was not part of the title to begin with. *Id.* at 1027.

By contrast, in *Penn Central*, the Court concluded that no taking occurred where the City disallowed a substantial office building expansion on top of Penn Central Station, in part, because it continued to be viable as a terminal. *Penn Cent.*,

9

438 U.S. at 136; *see also Welch v. Swasey*, 214 U.S. 91, 106 (1909) (finding no taking where zoning law restricted height of buildings for safety reasons). The Court described the inquiry into whether there is a regulatory taking as "essentially, ad hoc, factual inquiries." *Penn Cent.*, 438 U.S. at 124.

Judge Cohn followed the balancing test in *Penn Central*. He noted that the Court's analysis "does not divide a single parcel into discrete segments," but instead focuses "both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." *HRT Enterprises v. City of Detroit*, No. 12-13710, 2015 WL 4771118, at *6 (E.D. Mich. Aug. 13, 2015) (citing *Penn Cent.*, 438 U.S. 104, 130–31).

**B.     There is no Final Decision by the City.**

A regulatory taking claim is not ripe unless there is a final decision. There is no final decision or regulation that can form a basis for a regulatory takings claim in this case.

The primary case on the finality requirement is *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985). In *Williamson*, a property developer brought takings claims under § 1983 against a zoning board that had rejected the developer's proposal for a new subdivision. *Id*. at 176-77. *Williamson* held that the developer's Fifth Amendment claim was not "ripe" for two reasons. "First, the developer still had an opportunity to seek a variance from the

10

appeals board, so any taking was therefore not yet final." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2169 (2019) (citing *Williamson*, 473 U.S. at 186-194). This is colloquially called the "finality" requirement.

Second, the developer had no federal takings claim because he had not sought compensation "through the procedures the State ha[d] provided for doing so." *Id*. The Supreme Court in *Knick* overruled the second holding, but the Court left the finality requirement undisturbed. *Id*. at 2169, 2179; *see also Harrison v. Montgomery Cnty., Ohio*, 997 F.3d 643, 649 (6th Cir. 2021) (explaining that *Knick* left in place the requirement that there must be a "final decision" to take property, meaning that it is "known to a reasonable degree of certainty" what will happen to the property (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001)). "Exhaustion and finality certainly are kindred concepts, but the 'finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 504 (6th Cir. 2017) (quoting *Williamson*, 473 U.S. at 192). Finality is required before a regulatory takings claim can proceed to federal court.

"The finality requirement is relatively modest." *Pakdel v. City & Cnty. of San Francisco, California*, 141 S. Ct. 2226, 2230 (2021). A plaintiff must show that "there [is] no question . . . about how the 'regulations at issue apply to the particular

11

land in question.'" *Id.* (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)). "This requirement ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm." *Id.* (citing *Horne v. Dep't of Agric.*, 569 U.S. 513, 525 (2013)). "Along the same lines, because a plaintiff who asserts a regulatory taking must prove that the government 'regulation has gone 'too far,' the court must first 'kno[w] how far the regulation goes.'" *Id.* (quoting *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986)). There is no final decision by the City in this case.

Here, there is a final 1996 Airport Layout Plan, which *does not* approve taking HRT's property. There is a 2009 Airport Layout Plan, but as this Court has recognized repeatedly, that plan is not final. *See HRT Enterprises v. City of Detroit*, 524 F. Supp. 3d 713, 716 (E.D. Mich. 2021) ("As of 2015, the only approved Airport Layout Plan on file with the FAA and the State was the 1996 Plan."). And Plaintiff has not sought and been denied a building permit such that the City's zoning ordinances might be at issue. HRT sought a permit in 2002. The City issued the permit noting that any building over 35 feet at the front of the Property would not be reimbursed should the Property be taken. But the permit was issued, Plaintiff took no issue with the permit, and the permit expired in 2003.

There is no relevant ordinance or rejection of a building permit in this case. The FAA Part 77 regulation is a federal regulation, not a City ordinance. The

Tall Building Act is a state law, not a City ordinance. All cases relied on by Plaintiff involve an express regulation or ordinance. For example, Plaintiff relies heavily on *Amen v. City of Dearborn*, 718 F.2d 789 (6th Cir. 1983), which is distinguishable on several grounds, not the least of which is that it is distinguishable because at issue was the City's Master Plan and various Capital Improvement Planning Programs, *id*. at 798, which were all final decisions.

Perhaps the best evidence that there has been no final decision by the City is that since the inception of this case the City has still not adopted the 2009 proposal. Whether the 2009 proposal will ever be adopted is a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all.'" *Thomas*, 473 U.S. at 580-81. Because there is no reasonable certainty that the City airport will ever need to or be required to acquire the Property, this case is not ripe for adjudication. Therefore, there is no justiciable takings claim in this case.

## IV. CONCLUSION

There has been no final decision by the City as to implementation of any airport plan which might subject the Property to a taking as Plaintiff fears. Because Plaintiff cannot satisfy the finality requirement to bring regulatory takings claims, Plaintiff's claims are not ripe, and this Court lacks subject matter jurisdiction over this action. The City respectfully request that the Court grant its motion to dismiss this action without prejudice.

PLUNKETT COONEY

BY: */s/ Erik H. Johnson*
MICHAEL D. WEAVER (P43985)
ERIK JOHNSON (P85017)
MARY MASSARON (P43885)
Plunkett Cooney
Attorneys for Defendant
38505 Woodward, Suite 100
Bloomfield Hills, MI 48034
(248) 901-4025
mweaver@plunkettcooney.com
mmassaron@plunkettcooney.com
ejohnson@plunkettcooney.com

## PROOF OF SERVICE

I hereby certify that on July 13, 2022, a copy of this Motion was electronically filed and the attorney(ies) of record received notice via the court's ECF system.

PLUNKETT COONEY

BY: */s/Erik H. Johnson*
ERIK JOHNSON (P85017)
Plunkett Cooney
Attorneys for Defendant
38505 Woodward, Suite 100
Bloomfield Hills, MI 48034
(248) 901-4025
ejohnson@plunkettcooney.com

Open.00396.13930.29177569-1