UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HRT ENTERPRISES,

        Plaintiff,                                Case Number 12-13710

v.                                                  Honorable David M. Lawson

CITY OF DETROIT,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**

After a jury returned a verdict of almost $2 million in favor of plaintiff HRT Enterprises in this inverse condemnation case, the plaintiff filed a motion for attorney's fees and costs under 42 U.S.C. § 1988. The parties are familiar with the facts of the case, which have been set forth in several of the Court's previous opinions discussing this litigation that has endured for over a decade. The Court heard oral argument on the attorney's fee motion on June 28, 2023, during which it expressed skepticism over the bases of some of the plaintiff's fee requests, particularly its insistence that it may recover fees incurred in separate litigation. The Court understood, however, that the plaintiff is entitled to a substantial attorney's fee as the prevailing party in this case. The defendant acknowledges as much, but it takes issue with the plaintiff's proposed fee calculation on several grounds.

After the Court heard oral argument, the Court directed the parties to meet and confer to attempt to resolve their differences over the hours spent and hourly rates claimed by plaintiff's counsel and the allocation of hours incurred in this litigation as opposed to other cases. On August 21, 2023, the parties filed supplemental briefs stating their respective positions. On the same date, the plaintiff also filed a motion to "update" the motion for attorney fees seeking to add in hours

billed from March through August 2023. And on September 11, 2023, the plaintiff submitted a supplemental exhibit consisting of spreadsheets summarizing the components of its fee request.

The plaintiff now seeks an award of attorney's fees totaling $1,503,113.88 and expenses of $55,010.22. The defendant, as mentioned, does not quarrel with an award of fees under section 1988, but it believes that the amount should be less than half that claimed. For the reasons discussed below, the defendant is closer to target.

I.

The amended judgment in this case awards the plaintiff $2,125,907.43, consisting of a verdict for just compensation of $1,976,820 and prejudgment interest of $149,087.43. The verdict was rendered after a retrial, which followed an order granting a new trial when the plaintiff declined to accept a remittitur ordered by this Court's predecessor, Judge Avern Cohn, after an initial trial and jury verdict. The litigation has been pending a long time and was complicated in part by an intervening municipal bankruptcy. The dispute focuses on the City of Detroit's regulatory taking of the plaintiff's industrial property situated at 11111 and 11181 French Road, Detroit, Michigan adjacent to the Coleman A. Young International Airport.

The City's plans for the airport, and their effect on the viability of HRT's property for commercial use, have spawned multiple lawsuits in state court and this Court. Each of HRT's two tenants filed a lawsuit alleging inverse condemnation of their leasehold interests. Merkur Steel filed a taking suit against the City in the Wayne County, Michigan circuit court in September 1999. That suit resulted in a jury verdict in favor of Merkur Steel finding that the City's acquisition efforts amounted to a *de facto* taking of Merkur Steel's leasehold interest in the property. The Michigan Court of Appeals affirmed that determination and the $6.8 million compensation award. *See Merkur Steel Supply Inc. v. City of Detroit*, 261 Mich. App. 116, 680 N.W.2d 485 (2004).

Merkur Steel's sub-tenant Steel Associates, Inc. filed a separate action in the Wayne County circuit court against the City also alleging a *de facto* taking of its leasehold interest. In 2003, a jury found in favor of Steel Associates and awarded $4 million in compensation. The court of appeals affirmed in a 2005 decision. *See Steel Assocs., Inc. v. City of Detroit*, No. 254025, 2005 WL 2656648 (Mich. Ct. App. Oct. 18, 2005).

Subsequently in 2005, Merkur Steel, Steel Associates, and HRT collectively filed suit in the Wayne County circuit court against the City for inverse condemnation. The parties alleged "that the filing of the airport layout plan and the threat of potential condemnation of the property affected its property so adversely as to amount to [a] taking without just compensation." *HRT Enters. v. City of Detroit*, No. 268285, 2007 WL 2118867, at *1 (Mich. Ct. App. July 24, 2007). HRT proceeded to trial on its own, and in 2005 a jury returned a no-cause-of-action verdict in favor of the City. *Ibid.* The state court of appeals affirmed, stating that there was "competent evidence to support a finding that the city's actions were not a substantial cause of the decline of HRT's property and that the [C]ity did not abuse its legitimate powers in affirmative actions directly aimed at HRT's property." *Id*. at *7. The Michigan Supreme Court denied leave to appeal. *HRT Enters. v. City of Detroit*, 480 Mich. 1134, 745 N.W.2d 786 (2008) (mem.).

Next, HRT sued the City for inverse condemnation in this court in 2008 based on additional events that occurred since the 2005 trial. *HRT Enters. v. City of Detroit*, No. 08-14460 (E.D. Mich. 2008). Judge Cohn dismissed that case without prejudice, finding that because HRT did not seek compensation through state procedures based on the new facts, the case was unripe for federal review under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195-97 (1985), *overruled by Knick v. Township of Scott, Pennsylvania*, --- U.S. ---, 139 S. Ct. 2162 (2019).

Undaunted, HRT returned to state court in 2009 and again sued the City for inverse condemnation. The trial court dismissed that case based on *res judicata*, and the Michigan Court of Appeals affirmed. *HRT Enters. v. City of Detroit*, No. 304057, 2012 WL 3055221 (Mich. Ct. App. July 26, 2012) (per curiam). HRT did not seek leave to appeal to the Michigan Supreme Court.

HRT then filed the present lawsuit in 2012, alleging inverse condemnation based on events that occurred since the 2005 jury verdict in state court. The City filed a motion to dismiss or alternatively for summary judgment, pressing a *res judicata* argument based on the 2005 state court verdict in its favor and the dismissal of the 2009 state court case on the same grounds. Judge Cohn denied that motion, concluding that additional events that had occurred since 2005 would permit a new jury to find a taking of the property.

After additional motion practice, during which Judge Cohn found in favor of HRT on liability, the case proceeded to trial on the issues of damages and the date of taking. On April 24, 2019, the jury returned a verdict establishing the date of the taking as January 1, 2009 and the fair market value of the property on that date as $4.25 million. However, on October 30, 2019, Judge Cohn granted a remittitur of the verdict and reduced the judgment to $2 million after he found that the testimony presented at trial was not adequate to prove a higher valuation. The plaintiff filed a notice of its rejection of the remittitur on November 25, 2019. On the following day, Judge Cohn issued an order setting aside the verdict and granting a new trial "on the issue of damages."

After the case was reassigned to the undersigned, a second trial was held in August of 2022, which concluded with a verdict determining just compensation for the value of "land and buildings" taken in the amount of $1,976,820, and $0 for the value of "fixtures" associated with

the property. The parties filed an additional round of motions, including the present motion for attorney's fees.

II.

The plaintiff argues that as the prevailing party it is entitled under 42 U.S.C. § 1988 to recover attorney fees and "expenses" including "expert witness fees." The plaintiff contends that in addition to legal fees incurred during this lawsuit, it also is entitled to recover under section 1988 fees incurred in a laundry list of other separate lawsuits including (1) presentation of claims in the City of Detroit municipal bankruptcy, (2) a separate state court lawsuit against the City and an ensuing appeal (which the plaintiff lost), (3) separate litigation in state court over disputed charges for sewage runoff fees that the City assessed against the property, and (4) defense of an unspecified number of unidentified proceedings related to "blight tickets" issued by the City against the property.

The defendant responds that (1) the hourly rates quoted are based on a contemporary survey of typical billing rates in Michigan from 2020, but it is more appropriate to adjust the rates to correspond to dates the services were rendered over the decade this case has been pending based on both a 2014 State Bar rate survey and the most recent publication of rates, (2) the requests for fees incurred in separate lawsuits are foreclosed by Sixth Circuit precedent, (3) the billing records ostensibly attributed to the present litigation are comingled with numerous entries for legal work performed on other lawsuits and proceedings, and therefore the lodestar calculation should be discounted heavily, (4) none of the claimed "fees" or "expenses" including "expert witness fees" are recoverable as "costs" under 28 U.S.C. § 1920, and (5) costs of $1,254 already have been taxed, and no further award of costs is allowed.

Typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, the Court must "exclude . . . hours that were not reasonably expended." *Id.* at 434. A reasonable rate for the purpose of the lodestar calculation is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 716 (quoting Van Horn v. Nationwide Prop. & Cas. Ins., 436 F. App'x 496, 499 (6th Cir. 2011)).

When a prevailing party provides sufficiently reliable and "particularized" billing records, "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Imwalle v. Reliance Med. Prod.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). However, the invoices furnished must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours

were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553; *see also Hensley*, 461 U.S. at 433, 437 n.12.

The number of hours reasonably expended on a matter may include such things as time spent drafting pleadings, meeting with clients, and preparing the case for trial. *See Hensley*, 461 U.S. at 34 (noting that the hours should be of the type billed to one's client). However, the court may reduce the number of hours claimed where the documentation is inadequate or the time was not "reasonably expended." *Mehney-Egan v. Mendoza*, 130 F. Supp. 2d 884, 886 (E.D. Mich. 2001). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. 'A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.'" *Ibid.* (quoting Mich. R. Pro. Conduct (MRPC) 1.5).

There is a "strong presumption" that the lodestar represents the "reasonable" fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (holding that lodestar figure has "become the guiding light of our fee-shifting jurisprudence"). The party advocating a departure from the lodestar amount bears the burden of establishing that the adjustment is "*necessary* to the determination of a reasonable fee." *Ibid.* (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984) In determining whether to adjust the lodestar amount, courts may consider several factors, discussed below. *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

The defendant does not dispute that the plaintiff may receive a significant attorney fee under the present posture of the case. However, review of the billing records submitted provokes grave doubts about the propriety of the extremely large fee sought in this case. It is apparent that the plaintiff has presented an inflated accounting that includes numerous hours of attorney's fees

expended in several entirely separate matters, for which they have no legal grounds for seeking an award of fees in this case. In particular, the plaintiff claims entitlement to fees for work done on at least five separate suits including: proceedings in the City of Detroit's municipal bankruptcy, *In re City of Detroit*, No. 13-53846 (Bankr. E.D. Mich.) (150 hours); prior state court litigation between HRT's tenants, Wayne County case number 09-016475 (233 hours) and Michigan Court of Appeals case number 304057 (103.7 hours); a suit by HRT against the City Treasurer and the Detroit Water and Sewer Department involving disputed charges for sewage runoff assessed against the property, Wayne County case number 2017-015659 (89.3 hours); and an unspecified number of unidentified municipal proceedings concerning "blight tickets" issued by the City against the property, for which no separate accounting was presented. In addition to segregated billings for those separate litigations, it also is apparent that the records presented by the plaintiff nominally allocating billable hours to the present litigation include numerous entries for legal work performed on the several separate matters, which were comingled with hours that appear to have been legitimately allocated to this case.

Addressing a similar issue, the Sixth Circuit clearly stated that "fees under § 1988 are not recoverable for work performed in a completely separate case, even if, as here, that case involves the same defendant, and even if the defendant agrees to use the materials from the separate case in the present action." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013). HRT never mentioned that case in its initial motion. In its supplemental filing, it attempts unconvincingly to distinguish it and points the Court instead to *Webb v. Board of Education of Dyer County*, 471 U.S. 234 (1985). In *Webb*, the Supreme Court indicated that a court could award fees under section 1988 when the work performed was "useful and of a type ordinarily necessary to advance the civil

rights litigation." *Id.* at 243. But, as the Sixth Circuit pointed out, the *Webb* Court "upheld the denial of fees for work performed in separate proceedings." *Binta B.*, 710 F.3d at 629.

In *Webb*, a former school teacher challenged his firing before the local school board and in a lawsuit filed in court. He won his lawsuit by obtaining a consent decree, and his lawyer sought attorney's fees for the work before the school board. He maintained that the work he preformed before the school board "was analogous to discovery, investigation, and research that are part of any litigated proceeding," and therefore was "reasonably expended" as part of the court action. *Webb*, 471 U.S. at 240, 242. The Supreme Court was unconvinced and rejected that argument. *Id.* at 243. Citing this holding, the *Binta* panel concluded that the plain language of 42 U.S.C. § 1988 bars recovery of attorney fees expended in any proceeding separate from the litigation before the district court in which attorney fees are sought. *Binta B*, 710 F.3d at 630-31.

It is readily apparent from a review of the plaintiff's billing records that fees incurred in the several separate lawsuits are comingled pervasively throughout the ledger of hours purportedly incurred "in this case." Most conspicuously, a vast swath of the main tract of the ledger appears to comprise fees incurred almost entirely in the course of appearances and litigation by plaintiff's counsel presenting claims and contesting issues raised during the City of Detroit's bankruptcy proceedings. Thirteen entire pages of the billing records appear to be packed with appearances and filings in the bankruptcy case. *See* Billing Records, ECF No. 454-1, PageID.12147-12160. Those entries span more than a year, from an entry on July 18, 2013 annotated as "Reviewing City of Detroit bankruptcy petition" through an entry on December 22, 2014 that indicates work on a motion to reopen this case. During that entire period this case was *stayed* and *administratively closed*, *see* Order Staying and Administratively Closing Case, ECF No. 42, and no appearances

were recorded, nor were any papers filed by any party, until the December 2014 filing of the motion to reopen after the bankruptcy stay was lifted.

      In its supplemental brief, the plaintiff continues to insist that it can recover in this case the attorney's fees incurred in the bankruptcy proceedings. It reasons that its work in the bankruptcy matter was necessary to its success in this case because otherwise Detroit's bankruptcy would have wiped out the obligation to pay for the taking of the plaintiff's property. But even if that were true, as the defendant points out — and as the plaintiff concedes — there is no legal authority for fee shifting under the Bankruptcy Code. *In re Cole*, No. 15-00168, 2023 WL 356016, at *3 (Bankr. M.D. Fla. Jan. 6, 2023) ("[T]here is no right to prevailing party attorneys' fees on a claim objecting to discharge under 11 U.S.C § 727(a)."); *see also In re Wyatt*, 609 B.R. 530, 533 (Bankr. D. Idaho 2019) ("'No general right to attorney fees exists under the Bankruptcy Code.' *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Nor does any provision in § 727 provide for prevailing party attorneys' fees in causes of action under § 727(a)."). Allowing recovery of those fees here would amount to an unauthorized exception to the American Rule, which states that in the usual case, each side must pay their own attorney's fees "unless there is express statutory authorization to the contrary." *Hensley*, 461 U.S. at 429 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240 (1975)). After a comprehensive search of federal decisions, the Court has not located any case in which a prevailing party in a civil case was allowed to import its attorney's fees incurred in a related bankruptcy proceeding under the authority of 42 U.S.C. § 1988 or otherwise. The plaintiff has not cited any case holding that such a fee award is proper. The plaintiff's demand for substantial legal fees incurred in connection with the separate bankruptcy proceedings — during a period when this litigation was closed and the proceedings were stayed by order of the Court — cannot be honored.

The examples cited above are not the only instances of improperly comingled billing. Other entries indicate that within the ledger ostensibly devoted to legal work on this case the plaintiff recorded billings relating to the separate state court litigation in *HRT Enterprises v. Detroit Water and Sewer Department*, No. 2017-015659 (Wayne Cty. Cir. Ct.), where the plaintiff sued DWSD and the City over disputed charges for sewer runoff assessed against the property. For example, a December 20, 2013 entry indicates that 0.1 hours were billed for "Review[ing] Opinion from Judge Rhodes lifting the stay in rate case against DWSD," PageID.12149; an October 1, 2015 entry indicates that 0.5 hours were billed with the annotation: "Review recent developments in Detroit bankruptcy. Telephone from Lyle at DWSD re outstanding bills. Review DWSD billing information. E-mails with Andy Chamberlain. Telephone with Andy Milia," PageID.12167; and numerous entries from January 22 through February 17, 2017 logged more than 10 hours spent reviewing documents and drafting motions and briefs relating to "suspend[ing] property tax and utility payments," PageID.12176. Those questionable entries covering lengthy and widely separated spans before and after the stay of this case due to the bankruptcy litigation suggest that the corruption of the accounting is pervasive throughout and not confined to any discernible discrete period.

It is undisputed that the plaintiff is entitled to a substantial fee recovery, but only for the work performed *on this case*. In light of the pervasive inclusion of illegitimate billings throughout its legal ledger, it is impossible to determine with reasonable certainty that it is entitled to any amount approaching the nearly $1.8 million in attorney's fees that it seeks. It is therefore necessary for the Court to make some attempt, before computing the lodestar fee, to determine from the available information an appropriate discount against the gross total of hours billed and a suitable average hourly rate.

In its supplemental brief, the plaintiff concedes that 201 hours are related to separate litigation. It agreed to drop 75 hours of entries from its claim, cutting the total number of claimed hours from 3,075 to an even 3,000 hours. And it concedes that the parties agreed on 201 hours that were related to the separate bankruptcy proceeding, although it persists in its claim that all of those hours should be compensable in this case, despite case law to the contrary. But the plaintiff also seeks compensation for another 169 hours logged at various rates during six months of this year from March through August 2023. Also, it insists that approximately 658 hours of billings by attorney Neil Strefling are compensable despite the fact that they were accompanied by no descriptions at all, because, according to the plaintiff, the entries all "correlate" either with docket entries in the case or more descriptive entries logged by lead counsel Mark Demorest. And the defendant points to additional entries, which, along with the Strefling hours, total 1,111 hours that are questionable because they feature either vague descriptions that make it impossible to determine which litigation they were related to, or because they include no description at all of the work performed. Because of the poor descriptions and the inclusion of billed time that does not relate to this case, it follows that the plaintiff is not entitled to the recover all the attorney's fees it claims.

Under the circumstances, the Court is left with two options: (1) disallow the fee award entirely or (2) discount the number of billable hours to reduce the lodestar in rough proportion to the observable incidence of disallowable fees. *See Vanderhoef v. Dixon*, No. 16-508, 2020 WL 6864543, at *14 (E.D. Tenn. May 4, 2020), *R&R adopted*, 2020 WL 4673464 (E.D. Tenn. Aug. 12, 2020) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly. Here, the Court is unable to evaluate the reasonableness of the specific time expended in preparing Plaintiff's reply. Plaintiff did not submit either billing records or an

affidavit to establish as a factual matter his request for fees associated with the preparation of the Reply." (citing *Hensley*, 461 U.S. at 433)); *see also Bio-Med. Applications of Kentucky, Inc. v. Coal Exclusive Co.*, No. 08-80, 2011 WL 3568249, at *8 (E.D. Ky. Aug. 15, 2011) ("One option is to simply reduce the award. District courts may make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure. Another option in egregious situations is to disallow the award altogether.") (collecting cases discounting hours billed or gross lodestar by figures ranging from 10% to 40%) (citations omitted).

Taking the plaintiff's total claim of 3,169 hours and subtracting the 1,111 hours logged in disputed, poorly described billing entries, 2,058 hours remain. Based on that observable proportion of questionable billing entries to the total claimed, it is appropriate to impose a .67 multiplier, taking a 33% discount against the gross number of compensable hours to account for the pervasive corruption of the billing records, which the plaintiff has been intransigent in refusing either to clarify or concede. *Hensley*, 461 U.S. at 433; *Mehney-Egan*, 130 F. Supp. 2d at 886. That works out to a top line total of 2,091 hours for a decade of billable labor. The plaintiff has supplemented its fee motion with a request for compensation for the work performed on post-verdict matters. The total amount requested is for 168.6 hours of time divided among three attorneys. That time is documented properly and plainly is attributable to this current case. The hourly component of the lodestar will be 2,259.6 hours.

The second component of the lodestar calculation is determination of a reasonable hourly rate. The plaintiff has suggested hourly rates ranging from $225 to $450 per hour for the dozen attorneys who billed time claimed over the decade of litigation. However, the approval of specific rates for individual counsel is problematic because, for the reasons stated above, it is impossible to determine reliably the number of hours that reasonably and legitimately were expended by each

lawyer who worked on the case. Under these circumstances, the use of an average hourly rate is more appropriate due to the deficiencies in the accounting that make it impossible to reach any measure of certainty in partitioning the allowable fees among the several lawyers employed. For similar reasons, there is no sound basis for addressing the nuances among the proposed hourly rates based on experience and competence of counsel. It is undisputed that several of the lawyers involved have decades of experience in practice. However, the highly questionable nature of the fee request in gross weighs heavily against the assignment of any premium rate for the labor performed on a wholesale basis.

The State Bar of Michigan's published Economics of Law Practice for 2020 reports a range of median hourly rates from $250 for associates to $350 for partners in law firms across all areas of practice. *2020 Economics of Law Practice*, State Bar of Michigan, https://www.michbar.org/file/pmrc/articles/0000155.pdf. The mid-point of that range is $300 per hour. That overall market average supplies a reasonable basis for the calculation of the lodestar.

Multiplying total hours of 2,259.6 hours for a decade of billable labor by the reasonable market rate of $300 per hour yields a lodestar benchmark of $677,880.

The Court also must consider the factors outlined in *Hensley* to determine if any further adjustment of the fee is required. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at

430 n.3. The assessment of those factors is difficult in this case because the plaintiff made no effort to address them in its briefing. Instead, it devoted almost its entire presentation to its questionable effort to sustain its claim for fees that plainly are not recoverable under the statute and controlling case law. The discount suggested above is calculated to offset the unsound basis of the fee claim, and there are no circumstances apparent from the record that compel further reduction of the fee. However, the plaintiff's presentation also supplies no good reasons to award any premium over the lodestar amount. In the absence of any good grounds for a deviation, the lodestar is presumed to be reasonable. *City of Burlington*, 505 U.S. at 562.

The plaintiff also asks the Court to award compensation for costs incurred in the litigation. Those consist of $40,906.25 in expert witness fees, $2,099.16 in miscellaneous expenses, and an additional $1,700 for expenses incurred in litigating post-verdict motions. The defendant does not take issue with any particular line item, but it argues that none of the claimed fees or expenses, including expert witness fees, are recoverable as costs under 28 U.S.C. § 1920, and costs of $1,254 already have been taxed, and no further award of costs is allowed.

It is true that "[p]revailing parties are entitled to receive costs under Federal Rule of Civil Procedure 54(d)," but "a court may only tax costs as authorized by statute." *EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987), *superseded by statute on other grounds*, 42 U.S.C. § 1988(c) (1991)). "[S]ince 28 U.S.C. § 1920 lists which expenses a court 'may' tax as costs, that section only authorizes taxation of certain items." *Crawford*, 482 U.S. at 441.

However, the Court has the statutory authority under section 1988 to include in an award of attorney fees expenses incurred in the representation that are "incidental and necessary." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quoting *Sigley v. Kuhn*, 205 F.3d

1341, 2000 WL 145187, at *9 (6th Cir. 2000)). Recoverable expenses include those typically charged to a fee-paying client, such as photocopying, paralegal expenses, and travel and telephone costs. *Ibid.* Expert witness fees also may be taxed. 42 U.S.C. § 1988(c).

The plaintiff may recover the fees charged by expert witness Andrew Reed, who testified at both trials. The miscellaneous expenses of $2,099.16 will not be allowed because they consist of fees paid in other lawsuits and the plaintiff has not attempted to segregate them. However, the additional expenses of $1,700 are allowable because they plainly relate to the present case, and they consist of those expenses described by the court in *Waldo*. None of the expenses claimed duplicate the costs taxed by the Clerk under 28 U.S.C. § 1920 and Rule 54(d).

### III.

To summarize, the plaintiff may recover from the defendant attorney's fees in the amount of $677,880 and litigation expenses of $42,606.25, for a total of $720,486.25.

Accordingly, it is **ORDERED** that the plaintiff's motion for attorney's fees and expenses (ECF No. 454) and the motion to update the attorney's fee motion (ECF No. 483) are **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff shall recover from the defendant attorney's fees and costs in the amount of $720,486.25.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: January 16, 2024